BLAIS CONSTRUCTION CO., INC., Plaintiff,

v.

HANOVER SQUARE ASSOCIATES–I, Limited Partnership and Matthew Antell, Individually and as a General Partner of the Limited Partnership, Defendants.

HANOVER SQUARE ASSOCIATES–I, Limited Partnership and Matthew Antell, Individually and as a General Partner of the Limited Partnership, Third–Party Plaintiffs,

v.

YANKEE BANK FOR FINANCE & SAVINGS, FSB and the Federal Deposit Insurance Corporation as Receiver of Yankee Bank for Finance and Savings, FSB, Third–Party Defendants.

No. 89–CV–486.

United States District Court, N.D. New York.

March 27, 1990.

Menter Rudin & Trivelpiece, Syracuse, N.Y., for plaintiff; Gerald Mathews and Maryjane Hurley, of counsel.

Harris Beach & Wilcox, Rochester, N.Y., for defendants and third-party plaintiffs; Paul A. Yesawich, of counsel.

Hancock & Estabrook, Syracuse, N.Y., for third-party defendants; Thomas C. Buckel, Jr., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### I. Introduction

This suit is one of a number of construction contract and foreclosure actions arising out of the failure of efforts to renovate two large historical buildings located in the downtown business district of Syracuse, New York. These structures are generally known as the Larned building and the SA & K building. Different limited partnerships with similar names acted as the owners/developers of the two buildings. Hanover Square Associates–I, Limited Partnership ("HSA–I"), was the owner/developer of the Larned building. Hanover Square Associates–II, Limited Partnership ("HSA–II"), owned and developed the SA & K Building. Matthew Antell served as general partner of both HSA–I and HSA–II. Both renovation projects were financed by the same bank, Yankee Bank for Finance & Savings, FSB ("Yankee Bank"). Yankee Bank, as mortgagee, brought suit against both HSA–I and HSA–II, as mortgagors, for defaulting on payments due under separate construction loan agreements. While the foreclosure actions were proceeding, the Federal Home Loan Bank Board found Yankee Bank to be insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. In all this litigation the FDIC has been effectively substituted as the representative of Yankee Bank.

A third group of participants in these proceedings are contractors and subcontractors who claim that they were not compensated for labor and materials provided toward the Larned and SA & K projects. These businesses have placed mechanic's liens on the two buildings, pursuant to N.Y. Lien Law § 13, in an attempt to obtain payment. Plaintiff Yankee Bank/FDIC joined the mechanic's lienors as defendants in the foreclosure actions.

After Yankee Bank was placed into receivership, the FDIC successfully removed both foreclosure actions to this court pursuant to 12 U.S.C. § 1819. *See Yankee Bank v. Hanover Square–One*, 693 F.Supp. 1400 (N.D.N.Y.1988). The two foreclosure actions have proceeded separately; litigation concerning the SA & K building (which has been designated civil action 88–CV–224) is near completion—the premises having been sold at a foreclosure sale. On the other hand, the foreclosure action with respect to the Larned building (civil action 88–CV–223) has been delayed—perhaps due to a fire which severely damaged that structure.

The motions addressed in this memorandum-decision and order pertain to a third lawsuit, one based on the alleged breach of a construction contract, that is factually related to the two foreclosure actions. The plaintiff in this suit is Blais Construction Company ("Blais"). Blais entered into a contract with HSA–I to be the general contractor for the renovation of the Larned building in July of 1986 and has brought suit against HSA–I and Matthew Antell for allegedly breaching that contract (the "main action"). Over two years after the contract action was initiated, defendants HSA–I and Antell brought a third-party action against the FDIC in its role as receiver for Yankee Bank. The third-party complaint, which will be described in more detail below, generally asserts that HSA–I's breach, if any, was caused by Yankee Bank's failure to abide by the terms of a construction loan agreement. The FDIC subsequently removed the contract action from state court pursuant to 12 U.S.C. § 1819 and has now moved to dismiss

HSA–I/Antell's third-party complaint. Should the third-party complaint be dismissed plaintiff Blais requests that the action be remanded to state court for want of federal subject matter jurisdiction.

## II. Legal Background

The FDIC, as a third-party defendant, moves for dismissal of the third-party complaint on the basis that the requirements of Rule 14(a) of the Federal Rules of Civil Procedure ("Third Party Practice") have not been met. Rule 14(a) states in applicable part:

> At any time after commencement of the action a defendant party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.... Any party may move to strike the third-party claim, or for its severance or separate trial.

According to the FDIC, the claims asserted in the third-party complaint are not sufficiently derivative or dependent upon the adjudication of the claims in the main action, and therefore, the FDIC is not a person "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a).

■■■ Third-party practice, also known as impleader, is generally permitted when the third party's liability is "dependent upon the outcome of the main claim" or when the third party is "potentially secondarily liable" to the defendant. *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2nd Cir.1984). In all cases, however, "[t]he decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion." *Id.* The general purpose of Rule 14(a) is to serve judicial economy, discourage inconsistent results, and limit the prejudice incurred by a defendant by removal of the time lag between a judgment against the defendant and a judgment over against a third-party defendant. *Dery v. Wyer*, 265 F.2d 804, 806–07 (2nd Cir.1959). The liability of the third party defendant "must not arise out of a separate and independent claim," *Farmers Prod. Credit Ass'n of Oneonta v. Whiteman*, 100 F.R.D. 310, 312 (N.D.N.Y.1983), and "the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." 6 Wright & Miller, *Federal Practice and Procedure*, § 1446 at 257 (1971). A frequently cited summary of the considerations involved when determining whether Rule 14(a) impleader is proper is found in *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749 (5th Cir.1967), where the court stated:

> [W]hen the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim, impleader is properly used "to reduce litigation by having one lawsuit do the work of two." ... But we are also cognizant of the obverse rule ... that an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim.... The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party defendant must be "liable *secondarily* to the original defendant in the event that the latter is held liable to the plaintiff." ... Stating the same principle in different words, other authorities declare that the third party must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery ... or that the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant.... Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim.

*Id.* at 751–52; *see also Index Fund, Inc. v. Hagopian,* 417 F.Supp. 738, 743–44 (S.D.N.Y.1976) (overview of Rule 14(a) cited with approval by the Second Circuit in *Kenneth Leventhal & Co.,* 736 F.2d at 31).

## III. Factual and Procedural Background

The procedural history of the main and related actions is somewhat complicated. Each action will be described in turn.

### A. The Main Action: Blais v. HSA–I and Antell

Plaintiff Blais Construction initiated the main action against HSA–I and Matthew Antell in New York State Supreme Court, Onondaga County, on December 19, 1986; defendants served their answer on February 4, 1987. Blais claims that it incurred damages in the amount of $955,700 as a result of defendants' breach of a contract for the restoration of the Larned Building. Defendants answered the complaint by asserting that it was Blais who breached the contract and counterclaimed for damages which allegedly resulted from Blais's failure to comply with the contract. All parties agree that in July of 1986 they entered into a contract whereby Blais was to perform the general construction work on the Larned project. It is clear from the pleadings that the only legal claims asserted in the main action are for breach of contract.

While in state court there was a good deal of activity, if not substantial progress, in the main action between Blais Construction and HSA–I. The affidavits of counsel testify to numerous clashes over document discovery and depositions, stays of discovery, disputes over whether a Notice of Issue was properly filed, and appeals from the discovery orders of the state trial court. *See* June 28, 1989, Affidavit of Yesawich pars. 14–16; June 13, 1989, Affidavit of Hurley pars. 4(A)–4n(N).

### B. The Third Party Complaint

Over two years after serving its answer to the complaint in the main action, defendants HSA–I and Antell served a third-party complaint upon the FDIC in its capacity as receiver for Yankee Bank. The basic premise of the third-party action is that any failure on the part of the defendants to comply with the terms of their contract with Blais was caused by Yankee Bank's failure to timely advance monies pursuant to separate construction loan agreements between Yankee Bank and the defendants.

The large majority of factual assertions contained in the third-party complaint concern alleged wrongful conduct on the part of Yankee Bank with respect to its financing of the SA & K building. This, even though Blais's contract was for the renovation of the Larned building. *See* Third-Party Complaint pars. 10, 12–20, 22–25. Defendants HSA–I and Antell claim that wrongful conduct on the part of Yankee Bank in financing the SA & K building was a central cause of any failure by HSA–I/Antell to comply with the contract with Blais for the renovation of the Larned building. It is noted, however, that the two projects were owned by separate limited partnerships and financed through separate construction loan agreements.[1] Moreover, Yankee bank was not a party to the contract between HSA–I and Blais.

The third-party complaint alleges seven causes of action whereby the FDIC/Yankee Bank, as third-party defendant, may allegedly be held liable over to the defendants/third-party plaintiffs for any amount awarded to plaintiff Blais. Count I asserts that Yankee Bank failed to fund the Larned building project in accordance with the construction loan agreements, thereby

1. The court takes special cognizance of this apparent meshing of claims in light of its August 4, 1989, decision in *Yankee Bank for Finance and Savings v. HSA–II Limited Partnership,* 88–CV–224, 1989 WL 87430 (the SA & K foreclosure proceeding). There, the counterclaims of HSA–II and Antell against Yankee Bank/FDIC, concerning wrongful conduct on the part of Yankee Bank in the financing of the SA & K Building, were dismissed and Yankee Bank/FDIC was granted a judgment of foreclosure and sale. Many of the counterclaims which were asserted by HSA–II with respect to Yankee Bank's conduct in 88–CV–224 are very similar to the claims which have been asserted by HSA–I against Yankee Bank/FDIC in the third-party complaint.

breaching the agreement. Count II asserts that the former Yankee Bank engaged in negligent, careless and reckless commercial practices. Count III maintains that certain acts of Yankee Bank constituted an illegal tying arrangement under 12 U.S.C. § 1464(q)(1)(A–C). In Count IV it is asserted that Yankee Bank's conduct amounted to an unfair or deceptive act and practice under Article 22–A of New York's General Business Law. Count V asserts that Yankee Bank did not act with "reasonable concern for proper business practices," which caused HSA–I to default and impeded the orderly course of the Larned building project. Count VI asserts that if the plaintiff in the main action sustained any damages it is due to the "culpable conduct and/or negligence of Yankee Bank without any such culpable conduct or negligence on the part of defendants/third-party plaintiffs." On this basis HSA–I and Antell assert that they are entitled to be indemnified by Yankee Bank/FDIC for any judgment rendered in favor of the plaintiff. Count VII claims that Yankee Bank/FDIC is liable for contribution under Article 14 of the CPLR.

C. Foreclosure Proceeding: Larned Building

Yankee Bank provided a construction loan to HSA–I for the acquisition and renovation of the Larned building in Syracuse, New York. In return, HSA–I provided Yankee Bank with a mortgage as a security for the repayment of the loan. With the financing it received from Yankee Bank, HSA–I initiated the renovation of the Larned building in 1986. In November of 1986 Yankee Bank declared that HSA–I was in default on the loan. In February of 1987 Yankee Bank commenced a proceeding in New York State Supreme Court, Onondaga County, to foreclose on the Larned building. In addition to naming HSA–I as a defendant, numerous persons who had filed mechanic's liens on the property were also named as defendants; Blais Construction is one such "mechanic's lienor" defendant. As already noted, during the course of the foreclosure litigation the Federal Home Loan Bank Board found that

Yankee Bank was insolvent and appointed the FDIC as the receiver of the Bank pursuant to 12 U.S.C. § 1464(d)(6)(A). Thereafter, the FDIC removed the Larned foreclosure proceeding to federal court.

In February of 1988 HSA–I served an amended answer which interposed four counterclaims against Yankee Bank/FDIC. The first counterclaim alleged that Yankee Bank failed to fund the Larned building project in accordance with the construction loan agreement, thereby causing damage to HSA–I. The second counterclaim alleged that the conduct of Yankee Bank amounted to an unlawful tying arrangement under 12 U.S.C. § 1464(q)(1)(A–C). In the third counterclaim it is alleged that Yankee Bank engaged in an unfair and/or deceptive act and practice under New York General Business Law, Article 22–A. The fourth counterclaim maintains that Yankee Bank did not act with "reasonable concern for proper business practices," resulting in Yankee Bank precipitating defaults and impeding the orderly progress of the Larned project in a manner which damaged HSA–I. As is readily apparent, many of the counterclaims contained in HSA–I's amended answer are similar to the claims asserted by HSA–I against Yankee Bank/FDIC in the third-party complaint of the main action. Blais Construction also filed an answer which contained a number of counterclaims and cross-claims. In the first counterclaim Blais Construction asserted generally that the November 19, 1986, lien it filed pursuant to New York Lien Law is superior, either in whole or in part, to any liens held by other defendants or the plaintiff. In the second counterclaim Blais asserts that Yankee Bank knew that HSA–I was using proceeds from the construction loan on the Larned building to fund non-Larned building construction activity—an action which allegedly violates New York Lien Law Article 3–A. On this basis Blais maintains that Yankee Bank/FDIC should be equitably estopped from asserting a lien priority superior to that of Blais. In the third counterclaim Blais asserts that its lien on the Larned building is superior to that of Yankee Bank

because the construction loan agreement between Yankee Bank and HSA–I did not, in effect, contain a trust fund covenant as required by New York Lien Law § 13. The fourth counterclaim asserts that Yankee Bank lost its lien priority when it allegedly permitted the diversion of trust funds in violation of New York Lien Law Article 3–A. The fifth counterclaim alleges that Yankee Bank has lost its lien priority due to unspecified violations of New York Lien Law § 22. In the sixth counterclaim Blais maintains that Yankee Bank violated N.Y. Lien Law § 22 when it filed certain false affidavits—thereby losing its lien priority. The seventh counterclaim alleges that Yankee Bank lost its lien priority when it failed to file material modifications to the construction loan agreement in violation of N.Y. Lien Law § 22. In the eighth counterclaim Blais seeks to recover any wrongfully diverted construction loan agreement trust funds to which it allegedly had first right. The ninth counterclaim maintains that Yankee Bank and HSA–I acted in violation of certain "Debtor–Creditor Laws" and as a result any liens held by those parties is inferior to that of Blais. In sum Blais asserts that under N.Y. Lien Law its mechanic's lien is superior to any mortgage held by Yankee Bank/FDIC and that any loan proceeds (referred to as "trust assets") which were wrongfully withheld or allotted should be released to the appropriate beneficiaries.

D. Foreclosure Proceeding: SA & K Building

Yankee Bank, through a complex series of transactions, entered into a construction loan agreement with HSA–II Limited Partnership (*not* HSA–I) for the purchase and renovation of the SA & K building in downtown Syracuse, New York. The total amount covered by the construction loan agreement was approximately $4.5 million. Based on its assertion that HSA–II defaulted on the loan in November of 1986, Yankee Bank brought a foreclosure action in New York State Supreme Court, Onondaga County, on February 24, 1987. This action was also removed to federal court when Yankee Bank was placed into the receiver-

ship of the FDIC. Blais Construction was not a party to the SA & K foreclosure action.

In response to Yankee Bank's complaint, HSA–II asserted in its affirmative defenses and counterclaims that Yankee Bank caused the collapse of the SA & K project through bad faith and unreasonable delay in advancing construction loan proceeds. HSA–II also asserted that Yankee Bank engaged in unlawful tying as delineated in 12 U.S.C. § 1464(q)(1)(A–C); that Yankee Bank engaged in unfair and/or deceptive acts and practices under Article 22–A of the New York General Business Law; and that Yankee Bank did not act with "reasonable concern for proper business practices," resulting in Yankee Bank precipitating defaults and impeding the orderly progress of the project. HSA–II also asserted that Yankee bank tortiously interfered with certain contracts. Many of the affirmative defenses and counterclaims which were asserted by HSA–II in the SA & K foreclosure action are similar in both fact and law to those which have been asserted by HSA–I in the third-party complaint of the main action.

On August 4, 1989, this court issued a decision which rejected all of the affirmative defenses and counterclaims raised by HSA–II with respect to the SA & K project. This court held that Yankee Bank/FDIC was entitled to summary judgment of foreclosure and sale as against HSA–II. Therefore, it is clear that any claims which HSA–I has made in the third-party complaint of the main action, which are based on the conduct of Yankee Bank/FDIC with respect to the SA & K project, have already been adjudicated.

E. Motion To Sever In State Court

■ Defendants also assert that after the filing of the third-party complaint against the FDIC, but before the removal of the contract action to federal court, Blais made an unsuccessful motion to sever the third-party action. Defendants claim that the grounds for Blais's motion to sever in state court were similar to those pressed by the FDIC in the present motion.

*See* Affidavit of Yesawich pars. 18–22. Defendants further assert that the FDIC supported the motion to sever in state court in the same manner that Blais supports the FDIC's motion to dismiss the third-party complaint here in federal court. *Id.* at 21. According to the defendants the motion by the FDIC to dismiss the third-party complaint is an improper attempt to get a "second bite at the apple." The FDIC and plaintiff Blais have made no mention of the motion to sever in their litigation papers and no transcript of the state court's bench decision has been provided to the court—preventing this court from discerning the exact grounds for the state court's denial of the motion to sever. Given that the motion to dismiss the third-party complaint in federal court has been made by a different party than the motion to sever in state court, that a determination of the two motions rests on somewhat different rules of decision, and that no transcript of the state court decision has been placed in the record, this court will address the merits of Yankee Bank/FDIC's motion to dismiss the third-party complaint.

### IV. Discussion

To implead a third-party under Rule 14(a) the third-party defendant must be a person "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.Pro. 14(a). Yankee Bank/FDIC asserts that defendants HSA–I/Antell have failed to assert any legally cognizable claim that meets the requirement of being "dependent upon the outcome of the main claim." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2nd Cir.1984). For their part, HSA–I and Antell assert that the claims contained in the main action are intertwined with those presented in the third-party complaint in a manner which makes this a classic third-party action.

██ The main action is a simple contract claim which more than likely would be determined under the laws of the State of New York. The third-party complaint, on the other hand, alleges causes of action based upon federal and state statutes, negligence, breach of contract, indemnity, and contribution under New York CPLR Article 14. It is unclear whether state law or federal common law and policy will provide the rule of decision for the claims asserted in the third-party complaint. Though the question of whether the non-federal third-party claims are "dependent" or "derivative" with respect to the main claim is usually a question of state law, *D'Onofrio Construction Company v. Recon Company*, 255 F.2d 904, 906 (1st Cir.1958); *Kantlehner v. United States*, 279 F.Supp. 122, 126–27 (E.D.N.Y.1967); 6 Wright & Miller, *Federal Practice and Procedure* § 1446, at 252–53, federal law is to be applied in suits involving the FDIC for actions taken in the course of performing its duties as an administrator of nationwide federal programs. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (federal law applies to federal agencies when administering nationwide federal programs); *Gunter v. Hutcheson*, 674 F.2d 862, 869 (11th Cir.), *cert. denied* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (FDIC is vested by Congress with the authority to "protect and stabilize the national banking system"). State law may well be adopted as the rule of decision, particularly when the state law is not found to be hostile to the accomplishment of federal policy. *See United States v. Kimbell Foods, Inc.*, 440 U.S. at 726–29, 99 S.Ct. at 1457–59 (enunciating a three-part analysis to be applied when determining the appropriate rule of decision). Yet there are relevant situations under which federal policy will operate to block the application of state law claims against the FDIC. *See e.g., D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942); *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987) (generally standing for the proposition that secret or unwritten agreements with a bank may not be raised in suits involving the FDIC in its role as a receiver of a bank). At a minimum, the addition of the FDIC as a third-party defendant will add complicated federal legal issues and

choice of law questions to what appears to be a fairly straightforward state law contract action. This is a factor weighing in favor of this court exercising its discretion to dismiss the third-party complaint. *See* Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1443 at 304 (and cases cited therein).

■ The court will assume, for the sake of argument, that federal law would not operate to block the state law claims asserted by defendants/third-party plaintiffs HSA–I and Antell. In any event, Rule 14(a) impleader is permissible only when a right to relief is cognizable under the applicable substantive law. *Kim v. Fujikawa,* 871 F.2d 1427 (9th Cir.1989); *McLaughlin v. Biasucci,* 688 F.Supp. 965, 967 (S.D.N.Y. 1988).

■ Most of the causes of action asserted in the third party complaint are not derivative of or dependent upon the claims asserted in the main action. The third-party claims based on violations of 12 U.S.C. § 1464(q)(1)(A–C) and Article 22–A of New York's General Business Law are certainly independent of the main action since the main action asserts claims solely for breach of contract. The legal and factual issues surrounding the third-party statutory claims are independent of those that would be involved in the resolution of the main action. Therefore, these claims do not serve as an appropriate basis for Rule 14(a) impleader.

■ The breach of contract claim asserted by the third-party plaintiffs, without more, also fails to constitute a derivative cause of action because separate and independent contracts serve as the basis for the claims. The main action is concerned with a construction contract between HSA–I/Antell and Blais; Yankee Bank was not a party to that contract. The contract claim asserted in the third-party action is based on alleged violations of construction loan agreements between Yankee Bank and HSA–I/Antell; Blais was not a party to this contract. To permit impleader in this situation would go directly against the rule that liability of a third-party defendant "must not arise out of a separate and independent claim." *Farmers Prod. Credit Ass'n of Oneonta v. Whiteman,* 100 F.R.D. 310, 312 (N.D.N.Y.1983). This same reasoning applies to the direct third-party tort claims which are based on the alleged unreasonable, negligent, and reckless acts of Yankee Bank in its dealings with HSA–I and Antell. Since the main action does not assert a tort claim it is difficult to see how liability on the tort claims is "dependent upon the outcome of the main claim." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2nd Cir. 1984).

■ The two third-party causes of action which could be termed "claims over" from those asserted in the main action are the ones based on theories of contribution and indemnity. It is certain that the third-party plaintiffs' claim for contribution would not be cognizable under the laws of the state of New York. In *Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 24, 523 N.Y.S.2d 475, 476, 517 N.E.2d 1360, 1361 (1987) the New York Court of Appeals held that New York's contribution statute only permitted contribution among joint tortfeasors and not between two parties whose "potential liability to a third party is for economic loss resulting only from a breach of contract." In *Sargent* the court dismissed a third-party complaint for tort-based contribution because the underlying complaint asserted claims solely for breach of contract. *Id.* Since Blais has asserted claims in the main action solely for breach of contract, HSA–I/Antell cannot press a tort-based contribution claim against Yankee Bank/FDIC under the substantive law of New York. Thus, third-party plaintiffs HSA–I/Antell's cause of action for contribution does not present a proper basis for Rule 14(a) impleader.

In its memorandum of law defendants/third-party plaintiffs HSA–I and Antell assert that they have a cognizable claim for indemnity based on theories of implied indemnification and "tort-based" indemnification. Defendants Mem. of Law at 12. The factual basis for these legal claims are HSA–I/Antells' assertions that

Blais was a foreseeable third-party beneficiary of the construction loan agreement between Yankee Bank and HSA–I/Antell, that the sole reason for HSA–I/Antells' failure to pay Blais was Yankee Bank's failure to properly advance funds pursuant to the construction loan agreement, and that Yankee Bank wrongfully used economic duress in a manner which caused any breach by HSA–I/Antell of its construction contract with Blais.

■■■ Under New York law "[t]he right to indemnity ... springs from a contract, express or implied, and [when] full, not partial, reimbursement is sought." *McDermott v. City of New York*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460, 463 (Ct.App.1980). The "indemnification concept" under New York law is broad. *Id.* at 218–19, 428 N.Y.S.2d at 647, 406 N.E.2d at 464. New York courts will imply an indemnification contract in a large variety of situations based on principles of equity in order to avoid unjust enrichment, to prevent one party who has committed no actual wrong from being held vicariously liable for the wrongdoing of another, or to adjust for a great disparity in fault between two liable tortfeasors. This legal vehicle is often referred to as quasi contract. *See Id.* at 216–19, 428 N.Y.S.2d at 646–47, 406 N.E.2d at 463–64; *Peoples' Dem. Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir 1986); *see generally* New York Jur 2d, Contribution, etc. §§ 62–64 (outlining the many circumstances under which a right to indemnity has been implied). Though the theories of implied indemnification which have been put forward by the third-party plaintiffs appear to be highly questionable, this court cannot say, on the slim factual record before it, that there is no reasonable possibility that the claim presents a tenable theory of derivative liability. *See e.g. Salzman v. Holiday Inns, Inc.*, 48 A.D. 258, 369 N.Y. S.2d 238, 243 (A.D. 4th 1975) (defendant construction contractor, who was sued for breach of contract by owner, permitted to assert third-party claim, based on theory of implied indemnity, against corporation which financed owner's hotel project).

However, "even when there is a substantive right that creates secondary liability in favor of a third-party plaintiff, it must be remembered that the court may exercise its discretion to dismiss a third-party complaint." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1446 at 369; *see also Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d at 31 ("decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion"). Even assuming that the third-party plaintiffs have asserted a valid claim of derivative liability, this court believes that the better course is to dismiss the third-party complaint.

■■■ Unreasonable delay by a defendant in seeking to implead a third-party, especially when the delay causes prejudice to the plaintiff or when the defendant fails to offer a valid excuse for the delay, may serve as an appropriate basis for dismissal of the third-party complaint. *See Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 20–22 (S.D.N.Y.1985); Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1443 at 308. In the present case the third-party plaintiffs served the third-party complaint well over two years after they had answered the complaint in the main action. While it is uncertain whether plaintiff Blais has been unduly prejudiced by this delay, the defendants have failed to put forward any explanation for the late filing. As noted above, most of the legal claims and factual assertions pressed by the third-party plaintiffs were set forth well over a year earlier in their answers to the complaints in the foreclosure actions. "Absent any reasonable explanation, it must be assumed that there is no legitimate excuse for the delay, and the defendant has simply moved in a dilatory fashion." *Oliner v. McBride's Industries, Inc.*, 106 F.R.D. at 21. *See Connell v. Bernstein–Macauley, Inc.*, 67 F.R.D. 111, 116 (S.D.N.Y.1975). Though not the decisive factor, the court finds that defendant HSA–I/Antells' delay in filing the third-party complaint is prejudicial to the plaintiff and is a factor supporting dismissal.

As previously discussed, the addition of the FDIC as a third-party defendant in this action will inject a number of complicated federal law and choice of law issues into a fairly straightforward state law breach of contract action. The introduction of unrelated issues and undue complication of the original suit also serves as a factor supporting the denial of impleader. *See Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 777 (9th Cir.1986); *Connell v. Bernstein–Macauley, Inc.,* 67 F.R.D. at 116. Moreover, the rights and obligations of Blais with respect to HSA–I/Antell will largely be determined by the course of performance and terms of the construction contract for the renovation of the Larned building. The legal relationship between HSA–I/Antell and the FDIC, on the other hand, will largely be defined by separate construction loan agreements. Thus, while the claims alleged in the main action and the third-party complaint arise out of the same general transaction and occurrence, they do not arise out of the same core of facts. Courts have found a "lack in similarity between the issues and evidence required to prove the main and third-party claims" to be a factor "warrant[ing] dismissal of an impleaded party." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d §§ 1443 at 310. *See also United States v. Joe Grasso & Son, Inc.,* 380 F.2d at 751–52.

This court is highly skeptical as to whether the defendants' third-party action has any merit. Most of the factual assertions contained in the third-party complaint against Yankee Bank/FDIC concern the actions of Yankee Bank with respect to the SA & K building. Even if these allegations could be related to the breach of a construction contract on the Larned building, they are of no import in light of this court's August 4, 1989, decision granting the FDIC summary judgment of foreclosure and sale against HSA–II. Many of the causes of action with respect to the SA & K building, which have been asserted in the third-party complaint presently before this court, were reviewed and rejected in the August 4th decision. An apparent lack of substance to the claims asserted in the third-party com-

plaint also operates as a factor in favor of dismissal of the third-party complaint. *See Thompson v. United Artists Theatre Circuit, Inc.,* 43 F.R.D. 197, 201 (S.D.N.Y. 1967); Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1443 at 310–11.

Under these circumstances this court in its discretion holds that defendant HSA–I/Antells' third-party complaint is dismissed. Now that the FDIC is no longer a party to this action, the federal jurisdictional basis no longer exists. Therefore, this action is remanded back to the New York State Supreme Court, Onondaga County, pursuant to 28 U.S.C. § 1447(c). *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988).

IT IS SO ORDERED.