**LA CHEMISE LACOSTE, a French corporation, Plaintiff,**

v.

**GENERAL MILLS, INC., a Delaware corporation, et al., as additional defendants under Rule 19.**

**The ALLIGATOR COMPANY, Inc., a Delaware corporation, Defendant and Third-Party Plaintiff,**

v.

**JEAN PATOU, INC., Third-Party Defendant.**

**Civ. A. No. 3876.**

United States District Court,
D. Delaware.

Nov. 16, 1971.

* See 19 Del.C. § 2363(a), (e).

Thomas S. Lodge, of Connolly, Bove & Lodge, Wilmington, Del., and W. Brown Morton, and Donal B. Tobin, of Morton, Bernard, Brown, Roberts & Sutherland, Washington, D. C., and

Robert Abdesselam, Paris, France, of counsel, for plaintiff, La Chemise Lacoste, and third-party defendant, Jean Patou, Inc.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, Del., and Irving Constant and Brian L. Bilzin, of Rubin, Wachtel, Baum & Levin, New York City, and Arthur H. Seidel and Allen L. Greenberg, of Seidel, Gonda & Goldhammer, Philadelphia, Pa., of counsel, for additional defendants, General Mills, Inc., David Crystal, Inc. and Izod, Ltd.

Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Irving Constant and Brian L. Bilzin, of Rubin, Wachtel, Baum & Levin, New York City, and Seidel, Gonda & Goldhammer, Philadelphia, Pa., of counsel, for defendant, The Alligator Co., Inc.

LATCHUM, District Judge.

This is the Court's opinion on four motions pending in this trademark litigation. The factual background and pleadings must be set forth in some detail in order to properly understand the issues involved. In 1969, La Chemise Lacoste, a French corporation ("LCL"),[1] attempted to register its distinctive crocodile emblem[2] as a trademark for toiletries in the United States. The Alligator Company, Inc.,[3] with whom LCL

1. LCL was formed about 1934. After 1936, LCL ("LCL I") was operated as a "Société à Responsibilé Limiteé" S.A.R.L. About 1945, LCL I changed its form of corporate organization to a "Société Anonyme," S.A., the present LCL II. "LCL" will be used to refer to the present plaintiff and all its predecessors except where the context may require a more precise designation.

2. LCL alleges that a crocodile emblem has been for many years associated with M. René Lacoste, founder and still a principal officer of LCL, having originated during M. Lacoste's career as a Davis Cup tennis player as his personal symbol, and having become the commercial property of LCL as a trademark identifying its products throughout Delaware, the United States, France and the world.

3. "Alligator I," a Delaware corporation of St. Louis, Mo., is the signer of a license to Crystal I in 1958. On June 11, 1965 Alligator I sold all its assets to The Alligator Co., Inc. ("Alligator II") a Delaware corporation, owned by B.V.D. Corp., which was in turn owned by Glen Alden Corp. On September 22, 1970, Alligator II changed its name to Friedman-Marks, Inc. and caused the organization in Delaware of a new corporation called The Alligator Co., Inc. ("Alligator III"). On September 25, 1970 Friedman-Marks, Inc. transferred all the assets of its The Alligator Co. Division to Alligator III. On December 3, 1970 General Mills, Inc. acquired all the stock of Alligator III from Friedman-Marks, Inc. Alligator II was the original defendant in this case but Alligator III has been substituted there-

had previous agreements relating to particular articles of apparel, filed Oppositions in the U. S. Patent Office to LCL's toiletries trademark applications. LCL then commenced this suit on March 4, 1970 against Alligator in the Court of Chancery of the State of Delaware, in and for New Castle County.[4] That suit sought a declaratory judgment determining whether LCL, as against Alligator, has the right to use the crocodile emblem as a trademark on toiletries distributed in the United States. The case was thereafter removed to this Court pursuant to 28 U.S.C. § 1441. La Chemise Lacoste v. Alligator Co., 313 F.Supp. 915 (D.Del.1970).

Alligator's answer denied the material allegations of LCL's complaint. (Ans. ¶¶ 1–8). In the first and second counts of its counterclaim, Alligator asserted against LCL and the third-party defendant, Jean Patou, Inc. ("Patou"), that the sale by LCL, through Patou as its distributor, of toiletries in the United States carrying the crocodile emblem, infringes upon Alligator's registered United States trademarks (Ans. ¶¶ 9–25) and constitutes unfair competition with Alligator. (Ans. ¶¶ 26–30.)

In its third count of the counterclaim, Alligator alleges that in the early 1950's LCL commenced to market in the United States through a distributor, David Crystal, Inc., a New York corporation ("Crystal I"),[5] articles of apparel bearing the crocodile emblem which LCL is now using on toiletries; that Alligator subsequently sued Crystal I for trademark infringement and unfair competition in the United States District Court for the Southern District of New York, which action was terminated by entry on September 19, 1958, of a Consent Judgment in Alligator's favor, affirming, *inter alia*, Alligator's primacy and priority over any alleged rights of Crystal with respect to the use of a crocodile emblem as a trademark on articles of apparel; that the Consent Judgment was entered as a part of the said New York action which also provided for Alligator's subsequent licensing of Crystal I to market particular apparel using a specified crocodile emblem; and that, as a condition of and in order to induce Alligator to make the settlement, LCL entered into a letter agreement with Alligator stating that LCL approved of the Settlement Agreement, including the Consent Judgment and license, and consented to the acceptance thereof by Crystal I. (Ans. ¶¶ 17, 18.) Alligator further alleges that under the foregoing arrangement a License Agreement was entered into between Alligator and Crystal I on

---

fore by stipulation dated February 3, 1971 and is the current defendant. "Alligator" will be used to refer to the present defendant and all its predecessors except where the context requires a more definite designation.

4. Upon filing this suit, LCL moved to suspend the proceedings on the above applications pending in the Patent Office.

5. The original David Crystal, Inc. ("Crystal I"), now defunct, was a New York corporation that initially signed the LCL-Crystal license agreements in 1951 for the sale of articles of apparel in the United States under the crocodile emblem. Crystal I organized a Delaware subsidiary, also named David Crystal, Inc., ("Crystal II"), now defunct. On April 15, 1968 Crystal I merged into Crystal II and the former enterprise continued as a Delaware corporation. On September 23, 1969, Crystal II was acquired by General Mills, Inc., a Delaware corporation ("Mills"). Prior to the acquisition, Mills organized a Delaware subsidiary called D.C. Fashions, Inc. ("Fashions"). On September 23, 1969, Crystal II was merged into Mills and simultaneously Mills transferred to Fashions all of Crystal II's assets, liabilities and business and Fashions' name was changed to David Crystal, Inc. ("Crystal III"). The former Crystal enterprise has continued since as Crystal III with the only change being that Mills was thereafter the sole stockholder of Crystal III. "Crystal" will be used to refer to the present additional defendant and all its predecessors except where the context requires a more definite designation.

September 22, 1958, which provided that Alligator "has the sole and exclusive right to use as a trademark on or in connection with the sale in the United States of articles of apparel the words 'alligator' and 'crocodile,' the name of any lizard-like reptile, and pictorial representations of an alligator or crocodile or other lizard-like reptile;" that the License Agreement has continued in effect; and that LCL approved that Agreement in a letter dated July 14, 1959. (Ans. ¶ 19.)

Alligator also avers that many millions of dollars worth of apparel have been marketed in the United States by Alligator's licensees and related companies, including Crystal, under the particular trademark which LCL is now using on toiletries; and that all such use has inured solely to the benefit of Alligator, which is the owner of all of the good will symbolized by such use. (Ans. ¶ 20.) Alligator claims that LCL is now intentionally attempting to imitate on toiletries the trademark which Alligator owns and that this is bound to lead to confusion, mistake and deception of the public. (Ans. ¶¶ 21, 22, 23.) Accordingly, Alligator alleges that LCL's conduct in this regard constitutes a willful derogation from its contractual understandings with Alligator. (Ans. ¶ 33.)

After being served with Alligator's answer and counterclaim, LCL filed a pleading entitled:

"Plaintiff's Reply to Defendant's Counterclaim, Joining Additional Parties Needed For Just Adjudication Of The Third Count Of Said Counterclaim, And Asserting A Counterclaim Against Defendant To Which Said Additional Parties Are Also Needed For Just Adjudication." (Herein "LCL's Reply")

LCL's Reply after denying the material allegations of Alligator's counterclaim, joined General Mills, Inc. ("Mills"),[6] David Crystal, Inc. ("Crystal"), and Izod, Ltd. ("Izod")[7] as additional defendants pursuant to Rule 19(a) F.R.Civ.P. (LCL's Reply ¶¶ 34–36.) LCL claims that Mills, Crystal and Izod are needed for just adjudication of the third count of Alligator's counterclaim. LCL then purports to assert a "counterclaim in reply" not only against Alligator but also against the added defendants, Mills, Crystal and Izod.

I. *Motion To Dismiss This Action Against The Additional Defendants Or To Drop Them As Parties.*

Mills, Crystal and Izod have moved to dismiss the action against them under Rule 12(a) (6) because the pleadings fail to state a claim against them upon which relief may be granted or to drop them as parties, pursuant to Rule 21, because they are misjoined. In addition, Izod has moved to dismiss the action as to it under Rule 12(b) (5) for lack of jurisdiction based on the insufficiency of service of process.

The additional defendants were added pursuant to Rule 19(a) which reads:

"(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action

---

6. General Mills, Inc. ("Mills") is a Delaware corporation with its general offices in Minneapolis, Minnesota. On September 23, 1969, long before this suit was brought, Mills acquired through merger Crystal II and simultaneously transferred Crystal II assets and business to Crystal III, a wholly owned subsidiary of Mills. On September 25, 1970, Mills acquired all the stock of Alligator III.

7. Izod, Ltd. ("Izod") is a New York corporation. It was incorporated in 1956 but remained a corporate shell. Before December 1, 1959, Crystal I had an Izod Division in which it operated a men's wear business. On December 1, 1959 Izod was activated and the entire business of Crystal I's Izod Division was transferred to Izod and Izod has since remained a subsidiary of Crystal I, II and III.

if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."

▋ Obviously, Rule 19(a) can only be utilized to bring in parties needed for just adjudication of the dispute set forth in the pleadings existing at the time of joinder. The concepts of "just adjudication" and "indispensable parties" necessarily assume the pre-existence of a controversy as contained in the pleadings, for which the joined party's presence is necessary if there is to be just adjudication. It amounts to a misapplication of Rule 19(a) to add parties who are neither necessary or indispensable and who are not essential for just adjudication in order to be able to assert against them claims that are foreign and unrelated to the claims asserted in the pleadings and on a separate cause of action entirely.

▋ Thus, under Rule 19(a) a party may be joined only if his joinder will not deprive the Court of subject matter jurisdiction. Rule 19(a)(1) provides for joinder if, in the parties absence, complete relief can not be accorded among those already parties. Rule 19(a)(2) allows joinder of a party claiming an interest relating to the subject matter of the action in order to protect the rights

of the absent party or to protect the parties before the Court from the risk of incurring double or inconsistent obligations.

▋▋ In applying these standards for joinder under Rule 19(a), the Court must base its decision on the pleadings as they stood at the time of joinder. It is only after a party is properly joined under Rule 19 standards that there can be an assertion of claims against that party which are totally unrelated to the issues for which just adjudication is necessary. 6 Wright & Miller, Federal Prac. and Procedure § 1585 (1971). This is entirely logical because if the standards for joinder are not met, parties having no relation to the matters in controversy could be brought into the lawsuit on issues wholly extraneous to the matters in controversy.

Consequently, the motions of the additional defendants must be decided on the basis of whether Mills, Crystal and Izod are needed for just adjudication of the controversies framed by the Complaint, the Answer and Counterclaim, and the Reply thereto. No attention therefore can be paid to plaintiff's proposed amended and supplemental counterclaim, which is not before the Court and which speaks of generalized and unspecified claims to the "crocodile emblem" attributed to Mills, Crystal and Izod that have neither been asserted nor can be discerned from the pleadings at the time joinder was made. The purpose of Rule 19(a) is not to permit the commencement of a new and unrelated lawsuit against different parties.

The pleadings, at the time of the joinder of the additional defendants, related to the following issues:

1. Does LCL's use of the crocodile emblem on toiletries constitute (a) an infringement of Alligator's trademarks, (b) unfair competition with Alligator, and (c) the willful derogation of LCL's contractual understandings with Alligator? (Ans. ¶¶ 24, 30, 33.)

2. Does Alligator's objection to LCL's sales of toiletries in the United States under the crocodile emblem constitute a breach of the contractual relationship between Alligator and LCL? (Reply ¶ 46.)

3. Is Alligator's attempt to register the so-called "mirror image" of the crocodile emblem for all-weather coats a breach of the contractual relationship between Alligator and LCL? Reply ¶¶ 47, 48.)

4. Is Alligator's objection to LCL's attempts to register the crocodile emblem as a trademark for toiletries and soaps a breach of contractual relationship between Alligator and LCL? (Reply ¶¶ 49–51.)

5. Is Alligator's threat to oppose LCL's application to file the crocodile emblem as a trademark for bags a breach of the same contractual relationship? (Reply ¶¶ 57, 58.)

In none of the above disputed issues are the rights of Mills, Crystal or Izod involved and they are neither proper, necessary or indispensable to a determination of the foregoing questions, all of which are expressly limited to disagreements between Alligator and LCL. Indeed, LCL's Reply specifically alleges that the relationship between LCL, on the one hand, and Mills, Crystal and Izod, on the other, is governed by an altogether distinct set of contractual relationships and that no disputes or disagreements arising by reason of those contractual relationships are presented for determination by this Court as they are allegedly issues subject to arbitration under the supervision of the Court known as the Tribune of Commerce of the Seine, France. (Reply ¶¶ 41, 42.)

It is apparent from LCL's Counterclaim in Reply that LCL asserts no claim, right or cause of action against Mills, Crystal or Izod. All of the disputes to which the Reply refers, and which are the subject of Alligator's third count of its counterclaim, are exclusively between Alligator and LCL. The alleged basis for the issues posed by LCL in its Reply are (1) the 1958 agreement between Alligator and Crystal of which LCL is the alleged beneficiary; (2) the settlement of a dispute by Alligator, LCL and Crystal in 1967, and (3) the letters between Alligator and LCL in 1959 and 1963–64 as implemented by cooperation pursuant thereto. (Reply ¶ 43.)

The 1958 agreement referred to in (1) above is the same agreement as that on which Alligator relies for its third count of its counterclaim against LCL. Mills and Izod are not parties to that agreement, and Crystal's role can be satisfied by being a witness and not a party. Crystal is certainly not needed as a party merely because it has information concerning the contractual agreement.

Izod, not Crystal, was a party to the dispute referred to in (2) above between Alligator and Izod in 1967. Mills was not a party to that dispute or the alleged settlement. Again, to the extent evidence is needed concerning that dispute and settlement, Crystal and Izod are needed only as witnesses.

Neither Alligator nor LCL plead any cause of action in the Complaint, Answer and Counterclaim, or Reply thereto against Mills, Crystal and Izod. They are strangers to the dispute and should not be joined. Complete relief can be granted between LCL and Alligator without the presence of Mills, Crystal and Izod as parties. Moreover, LCL will not be subject to a substantial risk of incurring double, multiple or inconsistent obligations without Mills, Crystal and Izod being parties nor will the substantive rights of the latter be affected by an adjudication presented by the existing pleadings.

Accordingly, Mills, Crystal and Izod were improperly joined as parties under Rule 19(a) and they should be dropped from the action under Rule 21 for misjoinder.

LCL through discovery procedures attempted to keep Mills in this case by showing that Crystal and Alligator were merely *alter egos* of Mills. However, the record does not support this conclusion. The evidence adduced clearly establishes that Mills, Alligator, Crystal and Izod are separate and distinct corporate entities and operated as such. The law is well settled in this Circuit. Corporate entities must be respected in the absence of clear proof that one corporation is the mere agency or department of the other "and is used as an instrumentality to perpetuate fraud, justify wrong, avoid litigation or render it more difficult, or generally to escape liability for what are in substance its own acts, \* \* \*." Owl Fumigating Corp. v. California Cyanide Co., 30 F.2d 812, 813 (C.A.3, 1929); Zubik v. Zubik, 384 F.2d 267, 273 (C.A.3, 1967). The fact that one corporation is a wholly-owned subsidiary of another and that there may be common directors does not justify piercing the corporate veil. As stated in Coryell v. Phipps, 128 F.2d 702, 704 (C.A.5, 1942), aff'd on other grounds, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943):

> "[Plaintiffs have] the burden of establishing by a preponderance of the evidence, that the corporation was an artifice and a sham designed to execute illegitimate purposes in abuse of the corporate fiction and the immunity that it carries \* \* \*."

While it is true that Mills, as the sole stockholder of Alligator and Crystal, has the power to exercise control over these corporations, the record indicates that it has not chosen to do so. An opportunity for control by the parent company is offset by facts tending to evidence that no actual control was or is exercised. Miller v. Bethlehem Steel Corp., 189 F.Supp. 916, 917 (S.D.W.Va. 1960). The record in this case shows that each of the corporations are actually operated as separate and independent corporations. Furthermore, Mills does not exercise such control as to conclude that Alligator and Crystal are the *alter egos* of Mills justifying piercing the corporate veil so as to make Mills a party to this action.

Additionally, the Court concludes that, in any event, it lacks personal jurisdiction over Izod, a New York corporation. Service was purportedly made upon Izod under 8 Del.C. § 382. That long-arm statute provides that a foreign corporation which "transacts business" in this State shall be deemed to have appointed the Secretary of State as its agent to accept "legal process in any civil action, suit, or proceeding against it in any State or Federal Court in this State arising or growing out of any business transacted by it within this State." Thus, § 382 permits substituted service in a suit brought against a foreign corporation which transacts business, including the solicitation of orders, in Delaware in a cause of action which arises or grows out of the business transacted in Delaware. County Plumbing & Heating Company v. Strine, 272 A.2d 340, 343 (Del.Super.1970); Crowell Corporation v. Topkis Construction Co., 267 A.2d 613, 614–615 (Del. Super.1970).

While a showing has been made in this case that Izod has solicited orders for the sale of apparel to stores in Delaware, it is equally clear that Izod has never sold toiletries, soaps or bags using the crocodile emblem, or all-weather coats using the "mirror image" or solicited such business in Delaware. Since the latter are the only matters put in issue by the pleadings when Izod was joined as a party and purportedly served with process, it is obvious that no cause of action was asserted against Izod which arose or grew out of business transacted by Izod in Delaware. See Currie v. Chicago Blower Corp., 207 F.Supp. 177 (W.D.Pa., 1962). Izod has not been properly served with process and its motion to dismiss under Rule 12(b) (5), F.R.Civ.P. must be granted.

Accordingly, under Rule 21, Mills, Crystal and Izod will be dropped as party defendants because they were misjoined under 19(a). LCL's counterclaim in reply asserted against Mills, Crystal and Izod will be dismissed under Rule 12(b)(6), because it fails to state a claim against them upon which relief can be granted. The action will also be dismissed as to Izod under Rule 12(b)(5) because the Court lacks jurisdiction over Izod as it was not properly served with process.

## II. *Alligator's Motion To Compel Production of Documents.*

The second motion to be considered is Alligator's motion to compel LCL to produce documents in this Country. LCL raises three major objections to such production.

First, LCL contends that the production of the documents is premature because at the time the objection was made the parties to this suit and the issues involved could not be determined. LCL proceeding on the assumption that the Mills, Crystal and Izod motions to be dropped as parties would be denied, argued that Alligator's discovery should await discovery by these additional defendants to prevent wasteful duplication. Regardless of the sensibility of this contention when made, LCL's objection of prematurity is now moot in view of the Court's decision in Part I of this opinion. The additional defendants have been found not to be proper parties to this suit and there is no longer any reason to delay Alligator's request for production on the ground that the production is premature.

■ Second, LCL objects to producing any documents relating to products carrying the crocodile emblem other than toiletries and apparel. However, Alligator contends that the allegations contained in LCL's Complaint and Reply have broadened the issues in this action far beyond toiletries and apparel. For example, LCL claims the right to use the crocodile emblem on toiletries because of LCL's sales of sportswear and sporting goods in Delaware, the United States and throughout the World. (Comp. ¶ 4.) Paragraph 7 of the Complaint alleges that the crocodile emblem identifies LCL "on any products on which it appears," not just toiletries and apparel. Paragraph 44(2) of LCL's Reply speaks of the use of the emblem on apparel in foreign countries. Paragraph 45 of the Reply claims that LCL has a registered trademark on the crocodile emblem for sports equipment. Paragraphs 47 and 48 of the Reply lay claim to the crocodile emblem based on Alligator's use of the emblem on all-weather coats. Paragraph 50 puts soaps in issue and Paragraph 57 puts bags in issue. Since these matters are clearly put in issue by LCL's pleadings, they are relevant and discovery into the underlying facts is clearly permissible.

Alligator has offered to limit its request to the production of documents relating only to toiletries and apparel if LCL would agree to limit its proofs in the same manner. Because of the pending motions, LCL was unable to agree to limit its proofs. The Court concludes that so long as the present pleadings stand unchanged, LCL's objection to producing documents on products carrying the crocodile emblem other than on toiletries and apparel is not well taken and should be overruled.

■ Third, LCL objects to the production of documents in the United States and contends the discovery should take place in France. There is no affidavit in the record indicating the bulk or cost of shipping the documents here and really no factual basis on which the Court may sustain this objection. It would appear offhand that shipping the documents to the United States would entail less expense than attorneys making the trip to France for such discovery. This objection will be overruled.

With respect to the so-called minor objections of LCL to the production, the

Court concludes they are meritless on the present record in view of the breadth of the pleadings. LCL's pleadings, as they now exist, are unusually broad. They place in issue practically all the dealings between LCL and Alligator in the United States and elsewhere relating to all products carrying the crocodile emblem. So long as the pleadings remain in this posture, Alligator has the right to discovery under Rule 34. Of course, the parties, if they desire, may by stipulation limit the controversy to toiletries and apparel in the United States.

 LCL also claims the right to block out, prior to inspection, the names of its customers and accounts who are not parties to this action on the ground that this information is a trade secret. Trade secrets are not privileged but will be protected under an appropriate order if the Court deems that necessary. It is hoped that in the first instance the parties will be able to agree upon an appropriate protective order.

Finding that LCL's objections to Alligator's request for production are not well taken, Alligator's motion to compel discovery will be granted with an appropriate provision protecting LCL's trade secrets.

### III. *LCL's Motion For A Protective Order.*

The third motion before the Court is LCL's request for a protective order postponing the time when Alligator may take the depositions of Rene Lacoste, Bernard Lacoste and a third person to be designated by LCL. The basis for this motion is that the depositions should be deferred until after the Court has ruled on the question whether Mills, Crystal and Izod were properly joined as party defendants in this suit. Since the Court has now ruled in Part I of this opinion that Mills, Crystal and Izod were misjoined as parties and the action be dismissed as to them, LCL's motion to defer the depositions becomes moot. LCL's motion for further postponement of the depositions will be denied. However, the parties are urged in re-setting the date of the depositions to attempt to agree upon a date reasonably convenient to the deponents.

### IV. *LCL's Motion For An Injunction Pendente Lite Against Mills, Crystal, Izod and Alligator.*

 The final motion under consideration is LCL's application for an injunction pendente lite preventing Mills, Crystal, Izod and Alligator from diluting LCL's alleged common law trademark, i. e. LCL's crocodile emblem and LCL's registered trademarks, "Chemise Lacoste" and "Lacoste." This motion must be denied for several reasons:

First, Mills, Crystal and Izod are not properly made parties to this suit and the Court is without jurisdiction and power to enjoin them.

Second, the motion for injunctive relief is based upon allegations in the most part that are foreign to the issues in the present suit.

Third, to issue a preliminary injunction with respect to Alligator would be to resolve a serious and novel question of fact and law as between LCL and Alligator as to which has dominant rights in the crocodile emblem. The Court should not decide doubtful and difficult questions on a motion for a preliminary injunction. Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867 (C.A.2, 1971); N. W. Controls, Inc. v. Outboard Marine Corp., 317 F.Supp. 698 (D.Del., 1970).

Balancing all the factors, the Court concludes the injunction pendente lite should be denied.

Submit order in conformance with this opinion.