ASSOCIATED DRY GOODS CORPORA-
TION, Plaintiff–Appellant,

v.

TOWERS FINANCIAL CORPORATION,
Defendant–Appellee.

No. 1818, Docket 89–9058.

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1990.

Decided Dec. 12, 1990.

Martin E. Karlinsky, New York City (Robert P. Stein, Scheffler, Karlinsky & Stein, New York City, Judson W. Calkins, Office of Legal Counsel, The May Dept. Stores Co., St. Louis, Mo., of counsel), for plaintiff-appellant.

Dale A. Schreiber (Stephen P. Kramer, Loretta A. Sposito, Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel), for defendant-appellee.

Before MESKILL and ALTIMARI, Circuit Judges, and RESTANI, Judge.*

* The Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

ALTIMARI, Circuit Judge:

The central question presented by this appeal is whether a court may dismiss an action for failure to join an indispensable party, notwithstanding defendant's ability to join the party in question by asserting a compulsory counterclaim against it. Plaintiff-appellant Associated Dry Goods Corp. ("Associated") appeals from a judgment, entered in the United States District Court for the Southern District of New York (Robert W. Sweet, Judge), dismissing its complaint for failure to join an indispensable party.

Associated initiated this action against defendant-appellee Towers Financial Corporation ("Towers") to recover damages for Towers' failure to pay rent as required by a sublease agreement. In addition, Associated sought to obtain a declaratory judgment regarding the extent of its obligation to provide Towers with electrical service. In response, Towers moved to dismiss the complaint for failure to join an indispensable party. Fed.R.Civ.P. 12(b)(7). Towers argued that the suit must be dismissed since joinder of the building's landlord, 417 Fifth Avenue Corp. ("417 Fifth")—which was required in order to afford the parties complete relief—would strip the court of diversity jurisdiction. This motion was granted by the district court.

On appeal, Associated contends that because 417 Fifth was not a party to the sublease, it was neither a necessary nor an indispensable party to this action. In the alternative, Associated argues that Towers' ability to join 417 Fifth as a party—by asserting a compulsory counterclaim against it—precludes the court from dismissing the action "in equity and good conscience." See Fed.R.Civ.P. 19(b). For the reasons set forth below, the judgment of the district court is reversed and the action is remanded for further proceedings.

## BACKGROUND

Associated is a Virginia corporation with its principal place of business in St. Louis, Missouri. Since 1980 Associated has leased office space in a building located at 417 Fifth Avenue, New York, New York. The lessor of this building, 417 Fifth, is a New York resident, having its principal place of business in New York.

In June 1987, Towers, a Nevada corporation with its principal place of business in New York, began leasing the ninth floor of the building at 417 Fifth from Associated. Subsequently, on January 19, 1988, Towers and Associated entered into an additional sublease agreement allocating to Towers space on the seventh and eighth floors of the building. On the same date, 417 Fifth signed a consent to sublease agreement with Associated and Towers, in which it agreed not to unreasonably withhold or delay its consent to any alterations proposed by Towers, the subtenant.

Shortly after taking possession of the seventh and eighth floors, Towers determined that the existing electrical service on these floors was inadequate to serve its needs. Consequently, Towers approached Associated and the parties agreed to allow Towers to use 150 amps of power from the building's sixth floor. The parties submitted this agreement to 417 Fifth for its approval. Before 417 Fifth would approve this arrangement, however, it requested that the parties submit a schematic plan detailing the structural changes that would have to be made in order to divert the electrical power. To prepare this plan, Towers' engineer needed access to the building's basement. However, 417 Fifth denied Towers permission to survey the basement in which the electrical apparatus was located.

On July 5, 1988, Towers initiated an action against 417 Fifth in New York State Supreme Court seeking an order to show cause requiring 417 Fifth to consent to the proposed alterations and to grant Towers access to the basement. On the same day, Towers requested that Associated allocate an additional 200 amps of electrical power to the seventh and eighth floors.

Two months later, in September 1988, Towers agreed to discontinue its state court action in exchange for Associated's written promise that it would support Towers in the pursuit of its rights under the

sublease documents. By letter dated September 6, 1988, Associated agreed that

> [i]f [the] Overlandlord [417 Fifth] has not responded reasonably to said plans and specifications submission within 45 days of the date of submission … then Associated will support Towers in the pursuit of Towers' rights under the Sublease documents so long as and provided that Towers has not caused a material default with regard to its obligations under the Sublease documents.

Joint Appendix at A–76.

Subsequently, Towers and Associated submitted a letter to 417 Fifth detailing proposed alterations. After reviewing the submitted plans and determining that they were incomplete, 417 Fifth withheld its consent to the proposed modifications. Despite this refusal to consent, on November 30, 1988, Towers requested that Associated divert an additional 250 amps of electrical current to the seventh and eighth floors. The parties' efforts to conclude an agreement to accomplish this was interrupted, however, by Associated's initiation of this lawsuit.

From the beginning of the sublease term, Towers has refused to pay rent, claiming that it has not been able to use the subleased space as intended. In addition, Towers has failed to pay rent for the space on the ninth floor, although this space is being used as planned. Consequently, Associated commenced this action against Towers, seeking a declaratory judgment that Towers has breached the sublease agreement as well as damages arising from this breach. Towers moved to dismiss the action, alleging that 417 Fifth was an indispensable party that if joined would destroy complete diversity, thereby divesting the court of jurisdiction. Associated cross-moved for summary judgment in its favor. The district court granted Towers' motion to dismiss and denied Associated's cross-motion for summary judgment. This appeal followed.

During the pendency of the Rule 12(b) and summary judgment motions, Towers initiated a state court action joining both Associated and 417 Fifth as defendants. That action has progressed and is now in the discovery stage.

## DISCUSSION

Associated argues that because Towers has the ability to join 417 Fifth by asserting a compulsory counterclaim against it, the court cannot in equity and good conscience dismiss the suit for failure to join an indispensable party. *See* Fed.R.Civ.P. 12(h); Fed.R.Civ.P. 19. We agree.

Fed.R.Civ.P. 19 sets forth a two step inquiry for determining whether an action must be dismissed for failure to join an indispensable party. The first prong of the test focuses on whether the party should be joined if feasible. Rule 19(a) provides in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Unless Rule 19(a)'s threshold standard is met, the court need not consider whether dismissal under Rule 19(b) is warranted.

The district court found that 417 Fifth was a necessary party under Rule 19(a). The court based its decision on Towers' assertion in its motion to dismiss that if 417 Fifth was not joined Towers would be unable to obtain "full relief" on counterclaims it *intended to bring* against Associated and 417 Fifth. The court noted: "According to Towers' proposed answer and counterclaims, unless the Landlord is compelled to change its course and to act on the plans submitted, Towers will never be able to enjoy quietly the premises it had leased

from A[ssociated]." *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 127 F.R.D. 57, 61 (S.D.N.Y.1989).

■ It is troubling that the district court reached its conclusion by considering Towers' "putative answer" and proposed, but not yet pled, third-party claims. Indeed, it is the general rule that a court considering "whether [an] absent person's interest in the litigation is sufficient to satisfy ... the first sentence of Rule 19(a) ... must base its decision on the pleadings as they appear at the time of the proposed joinder." C. Wright & A. Miller, 7 *Federal Practice & Procedure* § 1604, at 40 (1986); *see La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596, 601 (D.Del.1971), *aff'd*, 487 F.2d 312 (3rd Cir.1973); *cf. Halpern v. Rosenbloom*, 459 F.Supp. 1346, 1354 (S.D.N.Y.1978) ("[P]laintiffs are not required to anticipate defendant's counterclaims and join all parties that may be necessary for defendant's benefit.").

■ Nevertheless, we accept for present purposes that 417 Fifth's inclusion in the action is necessary in order to afford complete relief to the parties. 417 Fifth may be considered a party to be joined if feasible under Rule 19(a), since without 417 Fifth, Towers would not be able to obtain full injunctive relief on any counterclaim it asserts against Associated to increase electrical capacity. For example, if 417 Fifth is not made a party, the court could not compel Associated to increase the amperage supplied to the seventh and eighth floors, for Associated cannot allocate this electricity without 417 Fifth's consent. Moreover, Towers' defenses to Associated's action to collect rent are based, in part, on 417 Fifth's alleged failure to comply with the consent to sublease agreement. Therefore, if the action were to proceed in 417 Fifth's absence, Towers might be forced to bring an additional state court action against 417 Fifth in order to obtain full relief. Thus, under Rule 19(a), 417 Fifth is a party that should be joined if feasible. Associated cannot join 417 Fifth as a party to the action, however, because the addition of 417 Fifth, a non-diverse party, would destroy complete diversity and strip the district court of subject matter jurisdiction over the suit.

Accordingly, the court must proceed to the second step of the indispensable party analysis, which requires it to assess whether or not, in equity and good conscience, the action should proceed in the necessary party's absence. Rule 19(b) enumerates four relevant considerations to guide the court's judgment:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Fed.R.Civ.P. 19(b). Upon assessing these factors, the district court concluded that the action should be dismissed. We disagree.

■ The drafters of Rule 19(b) did not assign relative weight to each of the factors enumerated in the Rule. Instead, the Rule allows courts themselves to determine the emphasis to be placed on each consideration according to "the facts of [the] given case and in light of the governing equity-and-good-conscience test." C. Wright & A. Miller, 7 *Federal Practice and Procedure* § 1608, at 91–92. In this case, we view as dispositive Towers' ability to avoid all prejudice to itself by asserting a compulsory counterclaim against Associated pursuant to Rule 13(a) and adding 417 Fifth as a party to the counterclaim under Rule 13(h). *See Abel v. Brayton Flying Serv.*, 248 F.2d 713 (5th Cir.1957); *see also Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 553 (5th Cir.1982) (absent party not indispensable when defendant may implead that party); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503, 505 (7th Cir.1980) (parties who may be impleaded under Rule 14 are never indispensable under Rule 19(b)). Towers' putative claims against Associated

all arise out of the transactions forming the subject matter of the instant case and are, therefore, compulsory. *See* Fed.R. Civ.P. 13(a); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970); *see also Crouse–Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 700 (2d Cir.1980) (" 'Transaction is a word of flexible meaning ... that [a] counterclaim embraces additional allegations ... does not matter.' ") (quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)). Because we believe that "the Rule 19(b) notion of equity and good conscience contemplates that the parties actually before the court are *obliged to pursue* any avenues for eliminating the threat of prejudice," we find that the action cannot be dismissed under Rule 19. C. Wright & A. Miller, 7 *Federal Practice & Procedure* § 1608, at 112–13 (emphasis added).

■ Towers contends that it may not assert counterclaims against 417 Fifth because, in light of *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the district court would lack jurisdiction over those claims. Prior to the *Finley* decision, it was well-settled that when diversity between parties is lacking, a court could assert ancillary jurisdiction over an additional party joined to a compulsory counterclaim pursuant to Rule 13(h). *See Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1070 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United Artists Corp. v. Masterpiece Prods. Inc.*, 221 F.2d 213 (2d Cir. 1955); *see also Crouse–Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 699 (2d Cir.1980). We believe that *Finley* does not invalidate this widely accepted practice.

*Finley* was initially brought as a Federal Tort Claims Act suit ("FTCA"), 28 U.S.C. § 1346(b), against the Federal Aviation Administration ("FAA"). Plaintiff's husband and two children were killed when their plane struck electric transmission lines on its approach to a San Diego airfield. The plaintiff, alleging that the FAA was negligent in operating and maintaining the runway lights, initiated a federal proceeding against it. Subsequently, plaintiff moved to amend her complaint to include claims against two other defendants, the San Diego Gas & Electric Company and the City of San Diego, arising out of the same accident. Plaintiff relied on the court's pendent jurisdiction to support these additional claims. The Supreme Court, noting that the FTCA contained a narrow statutory jurisdictional grant, held that a federal court adjudicating a matter under the FTCA could not exercise pendent jurisdiction over additional parties where no independent basis of jurisdiction exists. *Id.* 109 S.Ct. at 2007–08. *See Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1295 (2d Cir.1990); *Rodriguez v. Comas*, 888 F.2d 899, 905–06 (1st Cir.1989); *cf. Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989).

In dictum, the *Finley* Court stated that a federal court may assert ancillary jurisdiction "in a narrow class of cases." *Finley*, 109 S.Ct. at 2008. Drawing on this phrase, Towers argues that the Supreme Court intended to disapprove of federal courts' invocation of ancillary jurisdiction in cases involving compulsory counterclaims. *See* C. Wright & A. Miller, 7 *Federal Practice & Procedure* § 1436, at 276 (1990) (suggesting that *Finley* raises doubt as to the viability of ancillary jurisdiction in third party actions); *see also Community Coffee Co., Inc. v. M/S Kriti Amethyst*, 715 F.Supp. 772, 773 (E.D.La.1989). Although *Finley* circumscribed pendent party jurisdiction, we believe that the Court's language in *Finley* did not signal a retreat from established third-party practices.

In *Finley*, the Court emphasized that the posture of the claims asserted must be examined, 109 S.Ct. at 2007, and placed great reliance on the fact that the *plaintiff* added claims involving new parties whose only connection with the suit was that the claims against them "derive[d] from a common nucleus of operative fact" as the initial claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). According to the Court, this connection was too tenuous to support the exercise of pendent jurisdiction over the additional claims.

Compulsory counterclaims over which a court is willing to exercise ancillary jurisdiction generally arise in a different posture. In this case, for example, it is the *defendant*, not the plaintiff, that would seek to join a third party as a Rule 13(h) counterclaim defendant. As the Supreme Court recognized in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), ancillary jurisdiction should be more readily available to one haled into court against his or her will than to a plaintiff who has chosen the forum for litigation. *Id.* at 376, 98 S.Ct. at 2404. Moreover, the Supreme Court noted in *Owen* that "[a] third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence." *Id.* (citation omitted). The federal courts' longstanding practice of allowing permissive joinder of parties and claims stands in opposition to the broad reading of *Finley* that Towers urges in this case. Indeed, "Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of ancillary jurisdiction." *Id.* at 377, 98 S.Ct. at 2404. Therefore, we find that *Finley* does not bar the district court from exercising ancillary jurisdiction over any Rule 13(h) counterclaim that Towers asserts against 417 Fifth. *See King Fisher Marine Serv. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1161 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); *see also Fidelity and Deposit Co. of Maryland v. C and A Currency Exchange, Inc.*, 738 F.Supp. 302, 304 (N.D.Ill.1990) ("court hence hesitates to seize upon *Finley*'s ambiguous statement in order to 'roll back' the entire area of federal jurisdiction over third-party claims"); *Huberman v. Duane Fellows, Inc.*, 725 F.Supp. 204, 207 (S.D.N.Y.1989) (court "does not read *Finley* as threatening jurisdiction over impleaded third-party defendants.").

Finally, Towers contends that the pendency of the state court suit renders the exercise of federal jurisdiction unnecessary and requests this Court to dismiss this action without prejudice, or to stay the action, pending resolution of the parallel state court action. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In assessing whether to dismiss or stay an action under *Colorado River* a court should consider: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; and (3) the order in which the concurrent actions were initiated. *Id.* at 818, 96 S.Ct. at 1246. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 210 (2d Cir.1985). In this case, the federal forum is equally convenient and the federal suit was instituted prior to the state court suit. Moreover, after this action is reinstated, the parties may move to dismiss the state court suit and avoid "piecemeal" litigation. We find, therefore, that this argument is without merit.

## CONCLUSION

We have examined each of defendant-appellee's remaining arguments and find them to be without merit. In light of the foregoing, the district court's judgment is reversed and the action is remanded for further proceedings.

RESTANI, Judge:

I concur in the majority opinion, except to note that *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) does not entirely resolve the issue of the applicability of *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) to this matter.

In speaking with approval of ancillary jurisdiction in cases of third party actions, *Owen* was referring to impleader under Rule 14. Such third party actions, by their very nature, logically depend upon the underlying law suit. *Owen*, 437 U.S. at 376, 98 S.Ct. at 2404. The case at bar differs from the impleader described in *Owen* in that 417 Fifth's alleged liability to Towers,

which is to be asserted pursuant to a Rule 13(h) joinder to a counterclaim, does not logically depend upon Towers' alleged liability to Associated. Nonetheless, if not a logical dependency, there is a logical relationship and an intertwining between Towers' proposed claim against 417 Fifth and the underlying action. That is, the claim against the landlord is logically related to and intertwined with claims based on the sublease because of the necessity to construe the landlord's consent to sublease. The consent to sublease was part of the Associated–Towers contractual arrangement, which is the essence of the dispute.

One should not read *Owen* to establish a rigid test for ancillary jurisdiction based on logical dependence. Although it does not address joinder to a compulsory counterclaim, *Owen* has been viewed as representing a flexible approach to ancillary jurisdiction, at least in the area of defendant's joinder of additional claims. *See King Fisher Marine Service v. 21st Phoenix Co.*, 893 F.2d 1155, 1162–63 (10th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990) (logically related claim added against a non-diverse third party impleaded under Rule 14.)

Neither *Owen* nor *Finley* address directly jurisdiction over new parties ancillary to a compulsory counterclaim. The pre-*Finley* Second Circuit decisions on this issue, however, do enable resolution of claims that are inextricably enmeshed in resolution of the dispute between the parties to the primary action. *See Newburger Loeb & Co. v. Gross*, 563 F.2d 1057, 1070 (2d Cir.1977), *cert. denied* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United Artists Corp. v. Masterpiece Prods. Inc.*, 221 F.2d 213 (2d Cir.1955). *Finley* should not be read so broadly as to upset a flexible approach to ancillary jurisdiction in a case such as the one at hand.