## In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.

### No. NYAL–PH–8888.

United States District Court,
E. and S.D. New York.

July 2, 1991.

Steven J. Phillips, Levy, Phillips & Konigsberg, New York City, for plaintiffs.

Steven L. Lapidus, Robinson St. John & Wayne, Newark, N.J., for third-party defendants.

## AMENDED MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Some 700 asbestos cases in which workers were allegedly exposed to asbestos while working in New York state powerhouses were consolidated for trial and settlement by Judge Charles P. Sifton. Some of these cases were pending in the Southern District of New York and others were pending in the Eastern District of New York. After Judge Sifton, a judge of the Eastern District of New York, was designated by the Chief Judge of the Court of Appeals to sit in the Southern District of New York, he was designated by the Chief Judges of the Eastern and Southern District courts of New York to supervise all asbestos cases in the districts. The first forty-eight of these cases are on trial before Judge Sifton. Judge Sifton's designation to serve as a judge in the Southern

District has temporarily lapsed as a result of clerical error.

All 700 cases are before Judge Jack B. Weinstein for purposes of settlement. He has been designated by the Chief Judge of the Court of Appeals to sit in the Eastern and Southern Districts to hear asbestos cases.

Several third-party defendants have moved to dismiss defendant Owens Corning Fiberglas' (OCF) third-party contribution claims against them on the grounds that the courts lack subject matter jurisdiction. Additionally, they claim that the order of consolidation previously entered must be vacated because actions pending in different districts cannot be consolidated. Neither contention warrants dismissal.

## I: SUBJECT MATTER JURISDICTION

All parties agree that there is no federal question, nor is there complete diversity among plaintiffs, OCF and the moving third-party defendants. Diversity between the plaintiffs and OCF is conceded. The question is whether a district court can hear the third-party claims exercising "ancillary" or "supplemental" jurisdiction.

■ When a defendant seeking contribution in a federal suit impleads a third party there is "ancillary jurisdiction" over the new claim. The court exercises this jurisdiction over the third-party suit because the

> third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence.

*Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978).

The Court of Appeals for the Second Circuit has endorsed the use of ancillary jurisdiction to hear third-party claims for contribution in order to "avoid piecemeal litigation." *Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798, 810 (2d Cir.1979).

> The concept of ancillary jurisdiction allows a district court once it has acquired jurisdiction over a case or controversy to decide matters incident to the main claim which otherwise could not be asserted independently.

*Id.* Since third-party claims

> arise from the same transaction or occurrence, or from a common nucleus of operative facts, with the underlying claim which properly invoked the federal court's jurisdiction, there is ancillary federal jurisdiction over those federal claims.

3 J. Moore & R. Freer, *Moore's Federal Practice* § 14.26 at 14–118 (1991) (citing *United States v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

A more restrictive ancillary jurisdiction rule might require at least two lawsuits, one to decide plaintiff's claims against the defendant and the second the defendant's claim for contribution. In addition to added burdens on the courts and the defendant of two litigations, the defendant might have to pay a judgment and wait unnecessarily for the reimbursement it was entitled to under the law of contribution.

The recent Supreme Court decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), does not vitiate this sound impleader practice. *Finley* addressed "pendent party" jurisdiction in a Federal Tort Claims Act case brought by a plaintiff in a federal court which had federal question jurisdiction. Subsequently, plaintiff sought to amend the federal complaint to include claims against private nondiverse parties she had sued in a state action. *Id.* 109 S.Ct. at 2005. The *Finley* Court held in a 5–4 decision that relatedness of parties, without more, would not justify the exercise of "pendent party" jurisdiction on behalf of the plaintiff. *Id.* at 2008–10. The party seeking pendent jurisdiction in that case was the same primary plaintiff who had brought the original federal claim. She sought to circumvent the rule requiring diversity with respect to plaintiff and each defendant.

*Finley* does not invalidate long accepted principles of ancillary jurisdiction which do not undercut diversity requirements between plaintiffs and defendants. *See Associated Dry Goods v. Towers Financial*

*Corp.,* 920 F.2d 1121, 1125 (2d Cir.1990). The Court expressly distinguished the pendent party case it was deciding in *Finley* from "ancillary" jurisdiction cases. *Finley,* 109 S.Ct. at 2008. The Court of Appeals in the *Associated Dry Goods* case has held that *"Finley* did not signal a retreat from established third-party practices." *Associated Dry Goods,* 920 F.2d at 1125. *See also Huberman v. Duane Fellows, Inc.,* 725 F.Supp. 204, 205–06 (S.D.N.Y.1989).

Third-party defendants here attempt to distinguish *Associated Dry Goods* by noting that it involved compulsory counter claims rather than optional third-party claims. This ignores the broad language of the Second Circuit's decision:

> Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of ancillary jurisdiction.

*Id.* at 1126 (quoting *Kroger,* 437 U.S. at 377, 98 S.Ct. at 2404).

Congress reached the same conclusion as has this circuit. It recently codified the traditional ancillary jurisdiction power in Section 1367 of Title 28 of the United States Code, giving the old rule a new name. "Supplemental jurisdiction" may now be exercised in cases traditionally encompassed by ancillary jurisdiction. The section states in pertinent part:

> (a) Except as provided in ... (b) ... or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367. Subdivision (b) of Section 1367 excepts from (a) claims involving new parties brought by plaintiffs in diversity actions. The legislative history indicates that Congress sought to eliminate some of the confusion that followed the Supreme Court's decision in *Finley. See* H.R.Rep. No. 734, 101st Cong., 2d Sess. (1990), U.S.Code Cong. & Admin.News 1990, p. 6802. (This section would authorize jurisdiction in a case like *Finley,* as well as essentially restore the pre–*Finley* understandings of the authorization for and limits on other forms of supplemental jurisdiction.)

Movants contend that since Section 1367 applies to civil actions commenced on or after December 1, 1990, these cases, which were filed prior to that date, are not subject to its terms. The third-party complaints that brought these defendants into the litigation were filed in March of 1991, after the effective date of the statute. Such third-party claims should be treated as "actions" filed after the operative date of the statute to avoid unnecessary hardship to defendants. In any event, since it is clear that Congress enacted a provision with the same effect as the Second Circuit's continuing rule last enunciated after *Finley* in *Associated Dry Goods,* the operative date does not affect the outcome in the case at bar.

The district court has jurisdiction to hear the third-party claims.

## II: LEGITIMACY OF CONSOLIDATION

Third-party defendants' second and more novel argument is that the February 27, 1991 order of consolidation—which consolidated the Eastern and Southern asbestos powerhouse cases for trial and settlement—was without legal authority.

Consolidations have become increasingly common as the courts struggle to meet the challenges posed by the asbestos litigation crises. *See, e.g.,* Judicial Conference Ad Hoc Asbestos Report (1991). Presently, over 30,000 asbestos personal injury cases are pending in federal courts nationwide. Extraordinary steps, such as this large consolidation, are necessary to cope with the current judicial asbestos emergency. *Cf. Findley v. Blinken (Johns–Manville),* 129

B.R. 710, 745 (E. & S.D.N.Y.1991) (Memorandum, Order & Final Judgment) (extensive discussion of background of asbestos litigation, problems it has created and need for innovative solutions).

Rule 42 of the Federal Rules of Civil Procedure permits a court to order consolidation of actions pending before the court involving a "common question of law or fact." Fed.R.Civ.P. 42(a). The powerhouse cases all involve common questions of law and fact.

Nevertheless, it is asserted that prior cases deny power to consolidate cases pending in different districts. *See, e.g., Town of Warwick v. New Jersey DEP,* 647 F.Supp. 1322, 1324–25 (S.D.N.Y.1986); *Facen v. Royal Rotterdam Lloyd S.S. Co.,* 12 F.R.D. 443, 443 (S.D.N.Y.1952). One 1936 case addressed the problem not of consolidation, but of the power to try a case pending in one district within the geographical confines of another. *See In re Associated Gas,* 83 F.2d 734, 737 (2d Cir.1936) (Manton, C.J.). In that case the trial judge was designated to sit in the Northern and Southern Districts of New York and the Second Circuit held that he could not preside over the trial of a Northern District action in the Southern District.

We do not need to decide whether these precedents apply to consolidation of related mega-mass tort cases pending before the courts in different districts in the same circuit. Nor need we decide whether Section 1407 of Title 28, empowering the Multidistrict Panel to transfer cases, exhausts the power of the courts within the same circuit to consolidate cases pending in different districts for trial. The matter is easily resolved by applying Section 1404 of Title 28 to transfer all the related cases to a single district within the circuit.

In response to the third-party defendants' challenge to the consolidation order, plaintiffs moved for transfer pursuant to Section 1404 to the Eastern District the cases filed in the Southern District. When Judge Weinstein sitting as a Southern District Judge began to hear oral argument on the motion to transfer the Southern District cases to the Eastern District, he was physically in a courtroom of the main Eastern District Courthouse in the borough of Brooklyn in New York City. Third-party defendants objected that he had no power as a designated Southern District Judge to hear a Southern District motion in an Eastern District Courthouse. The proposition is doubtful. *See* Fed.R.Civ.P. 77(b); *In re Application To Take Testimony,* 102 F.R.D. 521 (E.D.N.Y.1984). The objection was pretermitted when the judge walked across the Brooklyn Bridge, continuing the hearing on the motion in a courtroom in the Southern District of New York.

Transfer is appropriate "for the convenience of the parties and witnesses, in the interest of justice" to any district where the action might have been brought originally. 28 U.S.C. § 1404(a). Factors relevant to a transfer determination include convenience of parties and witnesses, the relative ease of access to the sources of proof, the availability of process to subpoena witnesses if necessary, considerations of trial efficiency and the interests of the law in the "just, speedy and inexpensive determination" of actions. Fed.R.Civ.P. 1; *see also Town of Warwick,* 647 F.Supp. at 1323; C. Wright & A. Miller *Federal Practice and Procedure* §§ 1352 at 268–72 (2d ed.1990).

In view of the context of asbestos cases, in particular the enormous burden they place on the courts, the plaintiffs' need for prompt relief, and defendants' need to reduce transaction costs, transfer of the Southern District cases to the Eastern District will serve the interests of justice. Consolidation of these legally and factually similar asbestos claims will afford litigants an opportunity to prosecute the cases efficiently and expeditiously. It will avoid needless duplication in proof and decrease wasteful expenditures of time, energy and money. Availability of evidence, process, witnesses and other aspects of convenience weigh heavily in favor of the transfer.

Venue is proper in the Eastern District because each third-party defendant conducts business in the district sufficient to support a finding of residency and because a "substantial part of the events or omis-

sions giving rise to the claim" occurred in the district. 28 U.S.C. § 1391(a). Since this consolidation involves actions "not of a local nature," the cases against defendants residing in different districts in the same state may be brought in any such district. 28 U.S.C. § 1392.

A judge sitting by designation in a district has authority to transfer cases from that district. This general power is particularly useful in the instant litigation. The pool of attorneys and witnesses is exactly the same in the Eastern and Southern Districts, and their main courthouses are in the City of New York within semaphore flag distance of each other. Consolidation is appropriate and necessary both for judicial efficiency and to provide effective justice to the litigants. Breaking up the consolidated powerhouse cases at this point in the litigation would be wasteful of both court and litigant resources. *Cf.* 28 U.S.C. § 1406 (transfer from "wrong" district to proper district "in the interests of justice").

All consolidated powerhouse cases pending in the Southern District are transferred to the Eastern District. This transfer is effective *nunc pro tunc* to the time of consolidation. *Missouri v. Jenkins,* — U.S. ——, 110 S.Ct. 1651, 1660–62, 109 L.Ed.2d 31 (1990), does not limit the power of a court to make its orders operative as of an earlier date. That case dealt with a non-discretionary time limit that only Congress could extend. All Southern District transferred cases have now been consolidated with powerhouse cases pending in the Eastern District of New York.

### III: SERVICE OF PROCESS

Third-party defendants argue that the courts lack personal jurisdiction over them in some of the consolidated cases because OCF has failed to serve them with process. Service of process in all cases is necessary. *Direct Mail Specialists v. Eclat Computerized Technologies,* 840 F.2d 685, 688 (9th Cir.1988). OCF claims that proper service was accomplished in all cases. Affidavits confirming that proper service was accomplished must be filed and docketed.

Service of process in 105 cases appears to have occurred after the commencement of jury selection on April 1, 1991. It is expected that the same jury will sit not only in the present forty-eight powerhouse cases now being tried on the issue of damages in reverse bifurcation, but in other powerhouse case phases, including trials of specific liability issues.

Due process considerations loom large where, as here, a jury will sit for more than one phase of trials and a party is brought into the action after that jury has been selected. The party subsequently served will have to live with consequences of other parties' voir dire decisions if severance is not granted. Although consolidation of powerhouse cases has operated on the principle that informed defendants and third-party defendants will protect the interests of less-informed parties similarly situated, that principle cannot be stretched to deny a party its fundamental right to participate in the selection of a jury. Parties served after April 1st will not litigate any issues before the jury empaneled on that date unless they are provided with an opportunity to participate meaningfully in the jury's selection which will be trying their cases.

The third-party defendants served lately complain that their interests are not being adequately protected by the other similarly-situated parties now defending the first forty-eight damage trials. Their cry is premature. None of these third-party defendants are named in the forty-eight damage trials currently proceeding before Judge Sifton.

### IV: DUE PROCESS AND OTHER CONTENTIONS

Third-party defendants also raise other due process objections to the consolidated proceedings which need not be addressed at this time. They will be afforded the opportunity to participate fully in the litigation and to protect the interests of their clients consistent with due process while not being permitted to block the courts and other litigants from obtaining the benefits of trying and settling the powerhouse cases in an efficient manner.

The judges trying and settling these cases have established a briefing schedule for various motions. With the assistance of Special Master Kenneth R. Feinberg and the court's Magistrate Judges, discovery involving all the parties has been moving forward on an expedited basis. Discovery and settlement phases of the powerhouse cases must go forward without delay.

So ordered.