**INTERNATIONAL PAVING SYSTEMS, INC., Plaintiff,**

v.

**VAN–TULCO, INC., Reliance Insurance Company of New York, Reliance Insurance Company, American Reinsurance Company, Employers Reinsurance Corporation and North American Reinsurance Corporation, Defendants.**

**Donald J. CRECCA, as Trustee in Bankruptcy for A.V.A. Construction, Inc., Plaintiff,**

v.

**VAN–TULCO, INC., Defendant.**

**VAN–TULCO, INC., Third–Party Plaintiff,**

v.

**CITY OF NEW YORK, Third–Party Defendant.**

**CITY OF NEW YORK, Fourth–Party Plaintiff,**

v.

**BERGER, LEHMAN ASSOCIATES, P.C., Fourth–Party Defendant.**

No. 88–CV–1066 (DRH).

United States District Court, E.D. New York, Hauppauge Division.

Oct. 11, 1994.

ous forms of pre-trial relief, including summary judgment, amendment of the complaints, and impleader of additional parties. For the reasons set forth below, these motions are denied in part and granted in part.

### Background

In June of 1983, the City of New York (the "City") entered into a contract with Berger, Lehman Associates, P.C. ("Berger Lehman"), pursuant to which Berger Lehman was to design and plan the work for a construction project (the "Project") involving the renovation of the bus ramps at the St. George Ferry Terminal in Staten Island, New York. A few weeks later, the City, acting through the New York City Department of Transportation, entered into a contract with Van–Tulco, Inc. ("Van–Tulco"), whereby Van–Tulco would be the general contractor for the Project.

As part of Van–Tulco's contract with the City, Van–Tulco was required to furnish and deliver a labor and material payment bond. Van–Tulco delivered such a bond, with Van–Tulco acting as principal and Reliance Insurance Company of New York, Reliance Insurance Company, American Reinsurance Company, North American Reinsurance Corporation, and Employers Reinsurance Corporation acting as joint and co-sureties. According to the terms of the bond, Van–Tulco and the co-sureties became jointly and severally liable for the payment of all persons, firms, suppliers, subcontractors and corporations furnishing materials for or performing labor within the purview of the contract between Van–Tulco and the City.

Van–Tulco entered into a subcontract with AVA Construction, Inc. ("AVA"), whereby AVA was to supply and install latex modified concrete ("latex concrete") on the ramps of the ferry terminal. AVA, in turn, entered into an agreement with International Paving Systems, Inc. ("International Paving"), as sub-subcontractor, pursuant to which International Paving was to supply the latex concrete for the Project.

Shortly after its installation, certain portions of the latex concrete showed signs of cracking and delamination. As a result, the

Goetz, Fitzpatrick & Flynn by Donald J. Carbone, New York City, for Van–Tulco, Inc.

O. Peter Sherwood, Corp. Counsel, City of New York by Daniel Struck, New York City, for City of New York.

Morris, Graham, Stephens & McMorrow by Gerald P. McMorrow, Westbury, NY, for Berger, Lehman Associates, P.C.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

In these consolidated cases regarding the rights and obligations of the parties to several contracts for the renovation of the St. George Ferry Terminal in Staten Island, New York, the parties have moved for vari-

City is currently withholding payment of an outstanding contract balance to Van–Tulco pending a judicial determination of, *inter alia*, the cause of the cracking and delamination.

In early 1988, International Paving commenced an action against Van–Tulco and the co-sureties to recover pursuant to the payment bond. In this action, International Paving is seeking monies that AVA allegedly failed to pay pursuant to the sub-subcontract for the latex concrete. Subsequently, in 1990, Donald J. Crecca, as trustee in bankruptcy for AVA, sued Van–Tulco for monies due under its subcontract for the supply and installation of the latex concrete. In this second action, Van–Tulco asserted a counterclaim and offset against AVA on the ground that the cracking and delamination of the latex concrete was due to defects in the workmanship and materials furnished by AVA. Van–Tulco also brought a third-party action against the City asserting that Van–Tulco installed the latex concrete in accordance with the plans and specifications for the Project but that those plans and specifications were defective. Van–Tulco seeks to recover monies due under its general contract with the City, including monies owed for the concrete work on the Project. The City, in turn, brought a fourth-party action against Berger Lehman, asserting that if the plans and specifications were defective, it is the responsibility of Berger Lehman. The main claim in this action between AVA and Van–Tulco has been discontinued pursuant to a settlement, but Van–Tulco's counterclaims against AVA and the third- and fourth-party actions remain pending. Pursuant to this Court's Order dated November 10, 1992, the two actions were consolidated. 806 F.Supp. 17.

### Discussion

I. *Motion by the City to Dismiss the Third–Party Action for Lack of Subject Matter Jurisdiction*

At the outset, the Court considers the City's contention that the Court lacks subject matter jurisdiction over Van–Tulco's third-party action against the City. To properly address this claim, the Court must first ad-

dress whether the City was properly impleaded in this action.

### A. *Propriety of Impleader*

■ In support of its motion to dismiss the third-party action, the City contends that its impleader was improper under Federal Rule of Civil Procedure 14(a). (City Reply Mem. at 5–12.) Rule 14(a) provides in relevant part that

> [a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.*

Fed.R.Civ.P. 14(a) (emphasis added). The general purpose of Rule 14(a) is to serve judicial economy, discourage inconsistent results, and limit the prejudice incurred by a defendant by removal of the time lag between a judgment against the defendant and a judgment over against a third-party defendant. *Blais Constr. Co., Inc. v. Hanover Square Assocs.–I*, 733 F.Supp. 149, 152 (N.D.N.Y.1990) (citing *Dery v. Wyer*, 265 F.2d 804, 806–07 (2d Cir.1959)).

■ It is well settled that, for impleader to be available, the third party defendant must be "liable *secondarily* to the original defendant," or that "the third party must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery," or that "the defendant must attempt to *pass on* to the third party all or part of the liability asserted against the defendant." *See, e.g., United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751–52 (5th Cir.1967) (emphasis in original) (citations omitted). "Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be *dependent* upon the outcome of the main claim." *Id.* at 752 (emphasis added).

■ Because the third-party claim must be "dependent" upon the original claim, "there must be a more than tenuous relationship between the main and third-party claims," *National Union Fire Ins. Co. of*

*Pittsburgh, PA v. Gordon,* No. 87 Civ. 7695, 1991 WL 4753, at *7 (S.D.N.Y. Jan. 14, 1991), and "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1446, at 377–79 (1990). Moreover, the liability of the third-party defendant "must not arise out of a separate. and independent claim." *Blais Constr. Co.,* 733 F.Supp. at 152 (quoting *Farmers Prod. Credit Ass'n of Oneonta v. Whiteman,* 100 F.R.D. 310, 312 (N.D.N.Y.1983)).

Finally, "[t]he decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion," *Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir.1984) (citation omitted), and the Court "must balance the benefits of settling related matters in one suit against the possible prejudice to the plaintiff and the third-party defendant." *Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.,* No. 90 Civ. 8262, 1993 WL 427406, at *3 (S.D.N.Y. Oct. 15, 1993) (quoting *Consolidated Rail Corp. v. Metz,* 115 F.R.D. 216, 218 (S.D.N.Y.1987)).

Unlike the traditional grounds for a third-party action—indemnification or contribution—the third-party claim in this action is based upon the theory of breach of contract. The City contends that breach of contract is an inappropriate basis for impleader. It further contends that the breach of contract claim in this case is not "derivative" of the original action, and instead, arose out of a "separate and independent claim."

■ First, the Court considers whether a third-party action must sound in indemnification or contribution. Rule 14(a) merely requires that the third-party be one "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Thus, in reviewing the propriety of a third-party action, it seems that the primary consideration should be the *substance* of the claim—whether the defendant has attempted to pass on to the third party all or part of the liability asserted against the defendant—rather than the *form* of the defendant's claim. This interpretation of Rule 14 is supported by a recent case that is analogous to the case at bar:

> In this case, ... the "defending party" in the main action ... first tried to state a claim against [the third-party defendant] for indemnity and contribution, but eventually rested its attempt to shift liability on a breach of contract theory. Rule 14 requires that there be some sort of derivativeness or nexus between the primary liability ... and the basis for the attempt to assign third party liability.... But we have never held that such derivativeness must take the form of an indemnity or contribution claim.

*Campen v. Greenamayer,* Nos. 89–56050, 89–56057, 1991 WL 148750, at **5 (9th Cir. Aug. 5, 1991) (citations omitted). Having found the rationale of *Campen* to be persuasive, this Court finds that a breach of contract claim may form the basis for impleader of a third-party defendant, so long as it is sufficiently derivative of or dependent upon the main claim.

■ The second portion of the Court's analysis, then, is whether the breach of contract claim in this case was dependent upon the main action. In this action, the main complaint alleged that Van–Tulco failed to pay AVA monies due for certain concrete work on the Project. (Compl. at ¶¶ 2, 8.) The third-party complaint alleged, *inter alia,* that the City withheld payment from Van–Tulco for the supply and installation of the latex concrete at issue in the main action.[1] (*See* Third-party Compl. at ¶ 16; *see also* Van–Tulco Reply Mem. at 6.)

The complaints thus reveal that if AVA properly supplied and installed the latex concrete at the Project, then AVA would be entitled to payment under its contract with Van–Tulco. Similarly, if the latex concrete has been properly supplied and installed by its subcontractor, Van–Tulco would be entitled to payment from the City for this portion of the Project. Therefore, if AVA were

---

1. The third-party complaint further alleges that "[p]ursuant to Van–Tulco's subcontract with A.V.A., A.V.A. was to receive payment *following* Van–Tulco's receipt of payment for A.V.A.'s work from the City." (Third-party Compl. at ¶ 6 (emphasis added).)

entitled to recover against Van–Tulco for its concrete work on the main claim, Van–Tulco would be entitled to recover from the City for this concrete work on the third-party claim. Accordingly, it appears that Van–Tulco properly impleaded the City, for the City "is or may be liable" to Van–Tulco for all or part of AVA's claim against Van–Tulco, see Fed.R.Civ.P. 14(a), and the third-party claim was dependent upon the resolution of the original action.

Although this Court is aware of certain cases that have refused to permit impleader where the original and third-party claims arose from distinct contracts, see, e.g., Unilease Computer Corp. v. Major Computer Inc., 126 F.R.D. 490, 493 (S.D.N.Y.1989); Blais Constr. Co., Inc. v. Hanover Square Assocs.–I, 733 F.Supp. 149, 157 (N.D.N.Y. 1990), in each of those cases, the courts emphasized that the resolution of the contractual responsibilities at issue in the third-party claim was not dependent upon the resolution of contractual responsibilities at issue in the main action. In this case, in contrast, as explained above, the responsibility of the third-party defendant was dependent upon the resolution of the claim between the plaintiff and the defendant. Thus, the mere fact that the original and third-party actions arose from distinct contracts does not convince the Court that impleader was inappropriate in this case.

■ Finally, this Court has considered the benefits of impleader in this action, including judicial economy and the avoidance of inconsistent results, and weighed them against potential prejudice to the City. The City has not contended that it has suffered prejudice from the third-party action, nor has the Court, on its independent review of this action, found that any such prejudice has resulted from the City's impleader. Thus, the Court, in its discretion, finds that the benefits of impleader outweigh any potential disadvantages, and, therefore, the initiation of the third-party action in this case was appropriate under Federal Rule of Civil Procedure 14(a).

### B. Subject Matter Jurisdiction

■ Having determined that the City was properly impleaded in this case, the Court next considers the City's contention that the third-party complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] When considering a 12(b)(1) motion, the Court is required "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See Ensign–Bickford Co. v. ICI Explosives USA Inc., 817 F.Supp. 1018, 1028 (D.Conn.1993) (citation omitted).

Jurisdiction over the main claim in this action between AVA and Van–Tulco was founded on diversity of citizenship. 28 U.S.C. § 1332(a)(1). The third-party claim between Van–Tulco and the City, however, has no independent jurisdictional basis: there is no diversity of citizenship between the parties, nor does the claim raise a "federal question." See id. at § 1331. The City contends that, in light of the Supreme Court's decision in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), this Court lacks subject matter jurisdiction over Van–Tulco's third-party claim.[3]

In Finley, the plaintiff instituted an action in federal court against the Federal Aviation Administration under the Federal Tort Claims Act, for injuries arising from a plane crash. The plaintiff later sought to amend her complaint to include state-law claims arising out of the same accident against two additional defendants, claiming that the federal court had pendent jurisdiction over these non-federal claims. The Supreme Court held, however, that a federal court adjudicating a matter under the FTCA may not exercise pendent jurisdiction over addi-

---

**2.** In its moving papers, the City asserts that it moves to dismiss for lack of subject matter pursuant to Rule 12(h)(3). Rule 12(h)(3), however, merely provides that such a challenge to jurisdiction may be made at any time during the proceedings. The Court thus construes the City's motion as a motion to dismiss pursuant to Rule 12(b)(1).

**3.** As this action was commenced prior to December 1, 1990, 28 U.S.C. § 1367, which codifies pre-Finley doctrines of pendent and ancillary jurisdiction, does not apply. See David D. Siegel, Practice Commentary, 28 U.S.C.A. at 829, 837 (1993).

tional parties where no independent basis of jurisdiction exists.

In reaching its decision, the Court used rather broad language, explaining that "[a]ll our cases ... have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley*, 490 U.S. at 556, 109 S.Ct. at 2010–11. Moreover, in dictum, the *Finley* Court noted that a federal court may assert ancillary jurisdiction only "in a narrow class of cases." *Id.* at 551, 109 S.Ct. at 2008. Relying upon this language, the City contends that the *Finley* decision precludes the invocation of ancillary jurisdiction over a party that has been impleaded without an independent jurisdictional basis.

The Second Circuit, however, has explained that "[a]lthough *Finley* circumscribed pendent party jurisdiction, we believe that the Court's language in *Finley* did not signal a retreat from established third-party practices." *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1125 (2d Cir.1990). In *Associated Dry Goods*, the Second Circuit held that *Finley* does not bar the district court from exercising ancillary jurisdiction over a compulsory counterclaim, 920 F.2d at 1125, and other courts have similarly held that *Finley* does not prohibit the assertion of ancillary jurisdiction over impleaded third-party defendants. *See, e.g., Washington Hosp. Ctr. Nat'l Rehabilitation Hosp. v. Collier*, 947 F.2d 1498 (D.C.Cir. 1991); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996 (8th Cir.1990); *United States v. Microstar, Inc.*, No. CV 87–3210, 1991 WL 144223 (E.D.N.Y. July 19, 1991); *In re Joint E. & S. Dists. Asbestos Litig.*, 769 F.Supp. 85 (E. & S.D.N.Y.1991); *Huberman v. Duane Fellows, Inc.*, 725 F.Supp. 204, 207 (S.D.N.Y.1989) (cited with approval in *Associated Dry Goods*, 920 F.2d at 1126).[4]

◼ Thus, under *Associated Dry Goods*, to determine whether ancillary jurisdiction

should be exercised in this case, the Court must look to "established third-party practices." 920 F.2d at 1125. To determine whether the exercise of ancillary jurisdiction is appropriate in a particular case, the Court must consider whether the main and third-party claims arise from a "common nucleus of operative fact," as well as the "posture" in which the third-party claim is asserted. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374–77, 98 S.Ct. 2396, 2403–04, 57 L.Ed.2d 274 (1978).

◼ The third-party claim in the case at bar arises out of a common nucleus of operative facts with the main claim: at issue are the responsibilities of the respective parties regarding the supply and installation of latex concrete at the Project. (*See* discussion *supra* at 687.) Moreover, there is a "dependence" between the main and third-party claims (*see supra* at 687–688), and the third-party claim was made by the defendant, who was "haled into court against [its] will." *Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404. The third-party claim in this action thus meets the basic requirements for ancillary jurisdiction.

This result is not disturbed by the settlement of the main claim. As the Second Circuit explained in *Dery v. Wyer*,

> ancillary jurisdiction was not lost when the main cause of action was settled. Generally, in a diversity action, if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction.

265 F.2d 804, 808 (2d Cir.1959) (citations omitted). Similarly, the District of Columbia Circuit has recently explained that

> [t]o hold that jurisdiction can somehow lapse for want of diversity after the original defendant has perfected and properly pursued his third-party claim in federal court would only squander scarce resources—those of the courts as well as those of the parties. It would also discourage settlement between the original di-

---

4. The Court notes that, prior to the Second Circuit's decision in *Associated Dry Goods*, certain courts declined to exercise ancillary jurisdiction over impleaded parties, based upon the language in *Finley*. *See, e.g., O & K Trojan, Inc. v. Munici-pal & Contractors Equip. Corp.*, 751 F.Supp. 431 (S.D.N.Y.1990); *Aetna Casualty & Sur. Co. v. Spartan Mechanical Corp.*, 738 F.Supp. 664 (E.D.N.Y.1990).

verse parties; [a defendant] would be less inclined to settle with a diverse plaintiff if the result were that he could no longer pursue his pending third-party action against his non-diverse [third-party defendant], but must instead decamp from the federal court only to start anew in a state court.

*Washington Hosp. Ctr.,* 947 F.2d at 1501 (citation omitted); *see also First Golden Bancorporation v. Weiszmann,* 942 F.2d 726, 731 (10th Cir.1991); *Acres Int'l Corp. v. Moore Business Forms, Inc.,* No. CIV–85–146E, 1989 WL 158321 (W.D.N.Y. Dec. 26, 1989).

▆▆ The Court also finds that the policies of ancillary jurisdiction favor retention of the third-party claim in this case. The parties, the Magistrate Judge, and this Court have devoted a substantial amount of time to the issues in this case. Thus, "[i]t would neither be wise judicial administration nor fair to the parties" to dismiss the third-party claim at this point, and require litigation to begin anew in state court. *See Stamford Bd. of Educ. v. Stamford Educ. Ass'n,* 697 F.2d 70, 72 (2d Cir.1982). Moreover, in any event, the Court has jurisdiction over Van–Tulco's counterclaims against AVA and over the consolidated case involving International Paving. Thus, to require the parties to try this third-party action separately could subject the parties to inconsistent verdicts. Finally, that ancillary jurisdiction would be appropriate in this case is also supported by relevant case law: prior to the *Finley* decision, "it was well settled that a federal court properly exercising jurisdiction in an original action also had 'ancillary' jurisdiction over the defendant's third-party claim, regardless whether there was an independent basis for jurisdiction over that claim." *Washington Hosp. Ctr.,* 947 F.2d at 1500 (citing *Dery,* 265 F.2d 804; *see also* 6 Charles A. Wright, Arthur R.

Miller & Mary K. Kane, *Federal Practice and Procedure* § 1444, at 321–23 & nn. 21–22) (1990) (further citations omitted). Based upon these considerations, and in an exercise of its discretion, the Court will exercise its ancillary jurisdiction over the third-party claim.[5]

## II. *Motion by the City to Amend its Answer to Assert an Additional Defense and for Summary Judgment*

The third-party complaint against the City asserts three substantive grounds for relief.[6] In Count I, Van–Tulco alleges that the City has failed to pay the balance due on Van–Tulco's application for "Partial Payment: # 30," in the amount of $813,244.50. (Third-party Compl. at ¶¶ 1–20.) In Count II, Van–Tulco seeks to recover its final payment of the retainage withheld by the City, in the amount of $116,711.40. (*Id.* at ¶¶ 21–24.) Finally, in Count III, Van–Tulco claims that the City unreasonably deducted $27,900 from Van–Tulco's application for "Partial Payment: # 20." (*Id.* at ¶¶ 25–27.)

The City moves for summary judgment on these counts, contending that the monies requested were included in Van–Tulco's application for "final payment" under the contract, and that Van–Tulco has failed to satisfy a condition precedent to final payment: the submission of appropriately verified "as-built" drawings of its work on the Project. The City asserts that, as a result of Van–Tulco's failure in this regard, the City is entitled to judgment as a matter of law.[7] In response, Van–Tulco contends, *inter alia,* that the City has failed to plead with particularity the non-performance of the alleged condition precedent as required by Federal Rule of Civil Procedure 9(c). (Van–Tulco Opp.Mem. at 17.)

Rule 9(c) provides, in relevant part, that

---

5. The Court also exercises its jurisdiction over the City's counterclaim and fourth-party claim in this action, for the reasons cited above.

6. The third-party complaint, as originally drafted, alleged six grounds for relief. Counts IV, V, and VI, however, have been dismissed by stipulation of the parties.

7. The City also moved for summary judgment on the ground that "[i]ndemnification from the City is not available ... because the contact does not provide for it nor does the law imply it." (City Mem. in Support at 7–8.) Because Van–Tulco has not asserted a claim for indemnification against the City (*see* Van–Tulco Opp.Mem. at 2–3), this ground is meritless, and apparently has been withdrawn.

[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. *A denial of performance shall be made specifically and with particularity.*

Fed.R.Civ.P. 9(c) (emphasis added). The City admits that it failed to plead with particularity the defense of non-performance of the condition precedent[8] (*see* City Reply Mem. at 20–22), and has subsequently filed a motion to amend the pleadings in this regard.

The Court is thus confronted with the issue of whether the City may assert the improperly-pleaded defense of non-performance as a ground for summary judgment. Although the Court has found no authority in this Circuit regarding the effect of the failure to comply with Rule 9(c) on a motion for summary judgment, the Court notes that, in an analogous circumstance, the Second Circuit has permitted the assertion of an unpleaded affirmative defense as a ground for summary judgment. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

In *Block,* the defendants moved for summary judgment on statute of limitations grounds, an affirmative defense that defendants had failed to plead in their answer as required by Federal Rule of Civil Procedure 8(c). The district court construed the defendants' motion as one to amend the pleadings under Federal Rule of Civil Procedure 15(a) as well as one for summary judgment, granted the motion to amend, and then proceeded to consider the merits of the defendants' summary judgment motion. *See Block v. First Blood Assocs.,* 763 F.Supp. 746, 748–51 (S.D.N.Y.1991). The Second Circuit found that this practice was appropriate. *See Block,* 988 F.2d at 350–51. Thus, to determine whether the defense of failure to satisfy a condition precedent should be considered by the Court on this motion for summary judgment, the Court first considers the City's

motion to amend the pleadings pursuant to Rule 15(a).

**A. Amendment of the Pleadings**

Federal Rule of Civil Procedure 15(a) states, in pertinent part, that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice requires." It is well-established that this section is to be interpreted liberally, and that leave to amend should be granted "when the moving party has at least colorable grounds for the proposed amendment." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 734 F.Supp. 1071, 1078 (S.D.N.Y.1990) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Hous. Dev. Fund Co., Inc.,* 608 F.2d 28, 42 (2d Cir.1979)). As the Second circuit has often explained,

[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party. Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.

*State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). Thus, "it is rare that such leave should be denied". *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (citation omitted).

Van–Tulco contends that the City should not be permitted to amend its pleading to assert the defense of failure to satisfy a condition precedent on the ground that any such defense would violate the "spirit and intent" of the June 15, 1993 Stipulation and Order between the parties. This stipulation between Van–Tulco and the City resolves

---

**8.** The City contends that it failed to so plead because "Van–Tulco had not yet failed to submit the certified as-built drawings." (City Reply Mem. at 21.) The Court notes, however, that in August, 1989, approximately seven months prior to the filing of its answer to the third-party complaint, the City rejected Van–Tulco's pay-

ment requisition because of, *inter alia,* "Van–Tulco's failure to submit the required shop, working, and record drawings." (City Rule 3(g) Stmt. at ¶ 5.) In any event, the City could have moved to amend its answer prior to the filing of its motion for summary judgment. *See* Fed. R.Civ.P. 15(a).

"disputes and controversies arising solely in regard to the issue of quantities, unit costs and total costs contained in application for Payment # 30" which are at issue in Van–Tulco's third-party complaint against the City. (June 15, 1993 Stip. at 3.)

■ The Court is unconvinced that the amendment of the City's answer so as to include the defense of failure to satisfy a condition precedent would affect the stipulation or otherwise prejudice Van–Tulco. If the City succeeds in this defense, then Van–Tulco's claims for final payment would be precluded. Thus, the proposed amendment does not in any way affect the subject matter of the stipulation, which merely pertains to the maximum amount of damages that Van–Tulco may recover should it prevail on its claims under application for Payment # 30. Moreover, because the amendment of the answer to include this additional defense would not cause undue delay, was not made in bad faith, and would not otherwise prejudice Van–Tulco or the other parties to the action, the City's motion to amend its answer in this regard is granted.

### B. *Summary Judgment*

■ Having determined that amendment of the pleadings to include the defense is appropriate, the Court proceeds to consider whether this newly-asserted defense may form a basis for the City's motion for summary judgment. Although the Second Circuit in *Block* upheld the consideration of a newly-pleaded defense on a motion for summary judgment, the Court of Appeals noted that the plaintiffs in that case had failed to demonstrate that they were prejudiced by the amendment of the answer and the concurrent decision on the motion for summary judgment. *See Block,* 988 F.2d at 350–51. In the case at bar, however, Van–Tulco contends that, at the time that the motion for summary judgment was filed, Van–Tulco had not been afforded discovery on the issue of whether the "as-built" drawings were in compliance with the terms of its contract with the City. (O'Hara Aff. in Opp. at ¶ 25 & n. 8.) The Court is thus hesitant to proceed directly to the merits of the case, given the potential prejudice that could result from the

lack of full discovery on this issue. Therefore, the Court concludes that, in an exercise of caution, the Court should not proceed directly to the merits of the City's motion for summary judgment.

Thus, the City's motion for summary judgment is denied at this time; however, the Court will permit the City to renew its motion, in accordance with the Court's Individual Rules, when discovery on this issue is complete.

### III. *Motion by the City to Amend its Answer and Fourth–Party Complaint*

Along with its motion to amend its answer to include the defense of failure to satisfy a condition precedent, the City has moved to amend its pleadings in a variety of other manners, which are addressed below.

### A. *Amendment of Answer to Include Claim for Breach of Contract*

The City seeks to amend its answer to Van–Tulco's third-party complaint to include a claim for breach of contract for failure to provide appropriate as-built drawings. Unlike the amendment addressed above, *see* discussion *supra* at 691–692, which permits the City to assert the defense that in failing to provide the drawings, Van–Tulco has not satisfied a condition precedent, here, the City seeks money damages for Van–Tulco's failure in this regard.

■ Van–Tulco also opposes this motion to amend on the ground that such an amendment would violate the intent of the June 15, 1993 Stipulation. Van–Tulco contends that the Stipulation was reached, at least in part, on the assumption that the City's damages would be limited to the amount of damages set forth in the counterclaims as they existed at the time of the stipulation. Again, however, the Court notes that the stipulation applies "solely" to the disputes regarding the quantities and costs due under application for Payment # 30 (June 15, 1993 Stip. at 3), and sets forth the "maximum amount that may be recovered" under Van–Tulco's third-party complaint. (*Id.* at 4, ¶ 2.) The stipulation nowhere states or implies that the potential damages recoverable by the City are likewise

limited. As the terms of the stipulation are unambiguous in this regard, the Court may not consider extrinsic evidence to determine the obligations or intent of the parties. *See Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992) (citing *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990) (applying New York law)). Moreover, the stipulation was the product of an arms-length negotiation between the parties, and if the parties wished to include any additional terms or limitations, they could have done so prior its execution. *Cf. Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1278 (2d Cir.1989). Thus, the Court finds that the stipulation in no way precludes the assertion of an additional breach of contract claim by the City. Moreover, the Court finds that the amendment in this regard would not create undue delay, was not sought in bad faith, and would not result in prejudice to Van–Tulco or the other parties to the action. The Court thus grants the City's motion to amend its answer to include a counterclaim for damages for breach of contract.

### B. *Amendment of Answer to Increase the Amounts Alleged in the City's Ad Damnum Clause*

■ The City also moves to increase the amount of damages requested in its counterclaims against Van–Tulco and in its fourth-party claim against Berger Lehman. Amendments to the amount of the *ad damnum* clause "are to be liberally permitted unless there is prejudice to a party." *Shochat v. Weisz,* 757 F.Supp. 189, 196 (E.D.N.Y. 1991) (quoting *Greenspon v. Supermarkets General Corp.,* 744 F.Supp. 77, 78 (S.D.N.Y. 1990) (citations omitted)). In opposition to the City's motion in this regard, Van–Tulco has again asserted that such an amendment would violate the "spirit and intent" of the June 15, 1993 stipulation. As explained above, however, such an assertion is unpersuasive. *See* discussion *supra* at 692–693. Similarly, Berger Lehman's claims that the motion for increase could have been filed "at a much earlier date," and that the increase in damages would exceed the terms of its professional malpractice insurance policy, do not persuade the court that the amendment

would be "prejudicial" in the sense that the City's motion should be denied. Thus, the City's request to amend the *ad damnum* clause is granted.

### C. *Amendment of Fourth–Party Complaint to Include Claim for Litigation Expenses*

■ Although the fourth-party complaint alleges that Berger Lehman is obligated to pay the costs of City's legal defense, the City failed to explicitly request such costs. The City thus moves to amend the fourth-party complaint in this regard. In opposition, Berger Lehman has again asserted that such a claim could have been filed "at a much earlier date," and that the increase in damages would exceed the terms of its professional malpractice insurance policy. In that Berger Lehman was aware of the City's contention that it was liable for defense costs, and that the Court is unpersuaded that the amendment will result in prejudice to Berger Lehman, the City's motion to amend the fourth-party complaint to include a claim for litigation expenses is granted.

### IV. *Motion by Van–Tulco to Amend its Third–Party Complaint*

Van–Tulco also seeks leave to amend its third-party complaint in two respects. First, it seeks leave to increase the amount requested in the *ad damnum* clause with respect to its claim for monies owed on its application for Payment # 30. This request to amend was filed prior to the entry of the June 15, 1993 stipulation with regard to this payment application. In light of the stipulation, it appears that the Court need not address this proposed amendment. If Van–Tulco contends otherwise, it may move to amend this portion of the third-party complaint on or before November 30, 1994, in accordance with this Court's individual rules. The motion to amend in this regard is, however, denied at this time.

■ Secondly, Van–Tulco moves to amend Count I of its third-party complaint to "more precisely allege its breach of contract cause of action against the City." (O'Hara Aff. at ¶ 34.) The City has not contended, in

other than conclusory terms, that it will be prejudiced by such an amendment. In that it has not been shown that the City will be prejudiced by such an amendment, that the amendment will create undue delay, or that it was sought in bad faith, Van–Tulco's motion is granted in this regard.

## V. *Motion by the City to Implead Additional Fourth–Party Defendants*

### A. *Impleader of CRSS, Inc.*

 In June, 1985, the City entered into a contract with CRS Sirrine, Inc.[9] ("CRSS"), pursuant to which CRSS would provide engineering and inspection services for the Project. The City moves to implead CRSS, alleging, *inter alia*, that pursuant to their contracts, CRSS "agreed to indemnify the City from claims and expenses to which it might be subject by reason of the Engineer's fault or default" (City Mem.Impleader at 6), including "any and all sums that may be adjudged against the City in favor of Van–Tulco." (Bagley Aff.Ex. A at ¶ 59.) The City has thus alleged that CRSS, the proposed fourth-party defendant "is or may be liable" to the City "for all or part" of Van–Tulco's claim, as required by Federal Rule of Civil Procedure 14(a).

The Court, therefore, proceeds to consider whether it should exercise its discretion to permit impleader in this case. *See Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir.1984); *see also Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.,* No. 90 Civ. 8262, 1993 WL 427406, at *3 (S.D.N.Y. Oct. 15, 1993) (citations omitted). The City represents that: (1) there is a "minimal need for additional discovery" regarding this claim, and, therefore, that the trial of this matter would not be unduly delayed (City Mem.Impleader at 8; Bagley Aff. at ¶ 20); (2) that the issues regarding CRSS "will not further complicate the trial of the case" (City Mem.Impleader at 8); and (3) that failure to permit impleader could result in inconsistent verdicts. (Bagley Aff. at ¶ 21 & n. 19.) In light of these representations, as well as the

fact that the motion is unopposed,[10] the Court, in its discretion, grants the City's motion to implead CRSS.

### B. *Impleader of the "Lien Claimants"*

Following the initiation of this consolidated action, two actions have been commenced in state court with regard to the Project: D. Lambert Railing Co., Inc. and Scara–Mix, Inc. (collectively, the "lien claimants"), two of Van–Tulco's subcontractors, have filed lien claims in New York Supreme Court. The City contends that, under applicable law, it is obligated to withhold funds from Van–Tulco in the amount of such liens, and, accordingly, the City seeks to bring the lien claimants into this action.

 Although the proposed third-party claim arises from the same transaction or set of facts as the original claim, the City has not established that the lien claimants "[are] or may be liable to" the City "for all or part of" the Van–Tulco's claim against the City, as required by Federal Rule of Civil Procedure 14(a). Thus, unlike Van–Tulco's impleader of the City and the City's impleader of CRSS, the proposed third-party claim against the lien claimants is not "dependent" upon the main claim between Van–Tulco and the City, *see United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751–52 (5th Cir.1967), even under a broad reading of the requirements of Rule 14(a). Having failed to meet the standard for impleader, the City's motion is denied with respect to the lien claimants.

## VI. *Motion by Van–Tulco to Amend its Reply to Assert a Cross–Claim*

Van–Tulco also seeks leave to amend its Reply to the Answer and Counterclaim of the City in the third-party action. Pursuant to Federal Rules of Civil Procedure 13(g) and 15(a), Van–Tulco seeks to assert a cross-claim for contribution against Berger Lehman, whom the City has impleaded in this action as fourth-party defendant.

Rule 13(g) provides that

---

9. Counsel for the City asserts that CRS Sirrine, Inc. is the immediate corporate predecessor of CRSS, Inc.

10. Van–Tulco's opposition to the impleader of CRSS has been withdrawn by stipulation dated May 24, 1994.

[a] pleading may state as a cross-claim *any claim by one party against a co-party* arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed.R.Civ.P. 13(g) (emphasis added). Van-Tulco asserts that its claim for contribution against Berger Lehman is a claim "arising out of the transaction or occurrence that is the subject matter of the original action," and that the claim is asserted "against a co-party" within the meaning of the Rule.

■ The term "co-party" is not defined in the Federal Rules, and the term has been subject to varying interpretations. *See generally* John D. Bessler, Note, *Defining "Co-Party" Within Federal Rule of Civil Procedure 13(g): Are Cross-Claims Between Original Defendants and Third-Party Defendants Allowable?*, 66 Ind.L.J. 549 (1991); Arthur F. Greenbaum, *Jacks or Better To Open: Procedural Limitations on Co-Party and Third-Party Claims*, 4 Minn.L.Rev. 507 (1990). However, "[m]ost courts and commentators limit co-party treatment to parties having like status, such as co-defendants." Greenbaum, *supra*, at 562 n. 88. Because a defendant and a third- or fourth-party defendant do not share "like status," they are not generally considered to be "co-parties" within the meaning of Rule 13(g). *See id.* (collecting cases); *see also Ruston Gas Turbines, Inc. v. Pan Am*, No. 81 Civ. 5345 (S.D.N.Y. Mar. 1, 1984) (LEXIS, Genfed library, Dist file); *Johnson Controls, Inc. v. Rowland Tompkins Corp.*, No. 82 Civ. 122 (S.D.N.Y. July 20, 1983) (LEXIS, Genfed library, Dist file). This interpretation of the term "co-party" has been regarded as "the rule that best reflects the original intent" of Rule 13. 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1431 at 238 (1990) (citations omitted).

Because the vehicle of cross-claim is not available to bring a claim against the fourth-party defendant, Van-Tulco's motion to amend its Reply to assert a cross-claim is denied. In so ruling, the Court does not express an opinion on whether Van-Tulco may move to assert a claim against Berger Lehman in any other manner under Federal Rules.

### VII. *Motion by Van-Tulco for Sanctions*

Finally, Van-Tulco moves for sanctions pursuant to Federal Rules of Civil Procedure 11 [11] and 56(g), [12] alleging that the City's motion for summary judgment was "frivolous" in nature, and that the City's motion and its conduct during discovery are "designed to delay this lawsuit." (Van-Tulco Opp.Mem. at 21.) The Court has considered the City's conduct in light of the standards of the relevant Federal Rules, and finds that the City's conduct was neither frivolous nor an attempt to unnecessarily delay the proceedings. Van-Tulco's motion for sanctions is, therefore, denied.

### *Conclusion*

Based upon the foregoing analysis, the following is the Court's ruling with regard to the pending motions in this action:

(1) the City's motion to dismiss the third-party action for lack of subject matter jurisdiction is denied;

---

11. Rule 11 provides that all papers must be signed by the attorney submitting them, and that the signature constitutes a certification that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [the motion] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay...."

12. Rule 56(g) provides that

[s]hould it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits cause the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(2) the City's motion to amend its answer to assert the defense of failure to satisfy a condition precedent is granted;

(3) the City's motion for summary judgment is denied;

(4) the City's motion to amend its answer to include a claim for breach of contract is granted;

(5) the City's motion to amend its answer to increase the amounts alleged in its *ad damnum* clause is granted;

(6) the City's motion to amend its fourth-party complaint to include a claim for litigation expenses is granted;

(7) Van–Tulco's motion to amend its third-party complaint is granted in part and denied in part;

(8) the City's motion to implead additional fourth-party defendants is granted in part and denied in part;

(9) Van–Tulco's motion to amend its reply to assert a cross-claim is denied; and

(10) Van–Tulco's motion for sanctions is denied.

Furthermore, as case numbers 88–CV–1066 and 90–CV–531 have been consolidated for all purposes, the parties are directed to file all papers in this action under case number 88–CV–1066, and the Clerk of the Court is directed to close the file in case number 90–CV–531.

SO ORDERED.